**Julio EVANS, Plaintiff-Appellant,**

v.

**CALMAR STEAMSHIP CO., Defendant-Appellee.**

**No. 597, Docket 75–7456.**

United States Court of Appeals, Second Circuit.

Argued March 26, 1976.

Decided April 16, 1976.

Paul C. Matthews, New York City, for plaintiff-appellant.

Philip V. Moyles, New York City (Fuller Lawton & Moyles, P. C., New York City, on the brief), for defendant-appellee.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

Julio Evans appeals from a judgment in his favor for $40,000, entered in the Southern District on May 14, 1975, in this Jones Act suit, 46 U.S.C. § 688, against his former employer, Calmar Steamship Co., for injuries sustained to his knees during the performance of his duties as a boatswain on the S.S. Calmar on May 21, 1968 and again on June 14, 1968. In view of the prior history of the litigation, which we review below, we hold that there can be no appeal by the plaintiff and the judgment must stand.

The judgment for $40,000 was entered, upon the request of the plaintiff and with the consent of the defendant, during the second day of a second trial of the action before Judge Cannella and a jury. At the first trial before Judge Solomon, in October 1974, the jury returned a verdict of $60,000. Upon consideration of the defendant's motion for judgment n. o. v. or for a new trial or reduction of the verdict, Judge Solomon, on January 14, 1975, found the verdict to be grossly excessive and ordered that there be a new trial unless the plaintiff filed a remittitur to reduce the judgment to $40,000 on or before February 3, 1975. The plaintiff thereupon elected to proceed to a new trial which commenced before Judge Cannella on April 23, 1975, after Judge Solomon, on April 16, 1975, had entered a further order which directed that the "new trial by jury [be] limited to the issue of the damages to be awarded plaintiff."

Before discussing what transpired at the second trial, it would be helpful to summa-

rize briefly the issues posed by the evidence at the first trial. On May 21, 1968, Evans, then 51 and a boatswain on the S.S. Calmar, twisted and struck his left knee in an attempt to avoid falling into an open hatch. He admitted that he had knowledge that this hatch was open because he had discussed the situation with the mate prior to the accident. Although his knee swelled, he continued to perform his duties both before and after seeing the ship's doctor two days later. He applied hot towels to his knee and visited the Public Health Service Hospital at the next port, Baltimore, Maryland. Evans testified that the knee would give way on him, causing him to fall. One such fall occurred on June 14, 1968 on the Calmar, causing an injury to Evans' right knee and requiring additional medical attention.

Evans testified extensively concerning his subsequent troubles with his left knee and treatment therefor, including surgery in 1974. Following this surgery he experienced urinary problems and suffered a myocardial infarct which were noted in the hospital records to have been postoperative complications.

After selecting a jury on April 23 Judge Cannella adjourned the case to the following morning. On April 24, Judge Cannella advised counsel that he intended to submit to the jury the question of comparative negligence by special interrogatories so that the court could be sure that consideration would be given to any negligence of the plaintiff and that the jury would make appropriate allowance therefor in returning a verdict. In explanation, he referred to Judge Solomon's having accepted an ambiguous general verdict. Plaintiff's counsel objected strenuously on the ground that Judge Solomon's order limited the trial to the issue of damages. He moreover claimed that he was unprepared to try the case on any other basis since certain exhibits which he deemed relevant were misplaced following the conclusion of the first proceeding. Although Judge Cannella first indicated willingness to grant a mistrial in view of the reluctance of plaintiff's counsel to proceed, he concluded that the plaintiff

himself could furnish any necessary evidence and that the trial should proceed that afternoon.

■ We find no merit in plaintiff's contention that Judge Cannella's ruling violated the law of the case. As the judge presiding at the second trial he was not bound by any order of Judge Solomon. *Rogers v. Valentine*, 426 F.2d 1361, 1363 n.2 (2d Cir. 1970). Certainly, under the circumstances here presented, we cannot say that he abused his discretion.

■ While Judge Solomon had been content merely to charge the jury on comparative negligence, it is the preferred practice in such cases to focus the jury's deliberations by requiring, as Judge Cannella proposed, that they answer special interrogatories directed to that issue. Cf. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 433, 59 S.Ct. 262, 267, 83 L.Ed. 265, 271 (1934). Obviously the jury could not decide the amount of damages without determining the extent to which any negligence of the plaintiff contributed to his injuries. Had Judge Cannella followed Judge Solomon's ruling literally, over objection by the defendant, it might have constituted reversible error.

Plaintiff further argues that in any event he was entitled to a mistrial in order to prepare evidence on the issue of comparative negligence. His brief refers to "vital exhibits depicting the area or the equipment" which he did not have available. But it is unnecessary for us to determine whether Judge Cannella's refusal to grant a mistrial and directing the trial to proceed that afternoon was erroneous.

Faced with the necessity of going forward the plaintiff returned at 2:15 P.M. and announced his readiness to accept the $40,000 judgment. When the defendant agreed, the jury was dismissed and Judge Cannella signed an order which extended the time for plaintiff's acceptance of remittitur to that day. The order stated that it was "without prejudice to any and all rights of appeal to which the parties may be entitled upon the entry of a final judgment."

■ We hold that by agreeing to accept the remittitur after a jury had been empanelled at the second trial, such action was the equivalent to a settlement of the action and having settled the action there was nothing from which to appeal. Any claim of error on the part of Judge Cannella can no longer be heard once the action was settled. Once the plaintiff has elected to go the route of a second trial he must see it through to judgment if he has any desire to complain of what was done either as a result of the first trial, or as a result of the second trial. Here plaintiff did not see the second trial through, as did the plaintiff in *Reinertsen v. Rogers Construction Corp.*, 519 F.2d 531 (2 Cir. 1975) in which case this court reviewed not only Judge Mansfield's order of remittitur after the first trial, but the judgment at the second trial. Rather, Evans, whose counsel was also counsel for plaintiff-appellant in *Reinertsen*, apparently thought a settlement at $40,000 was better than risking a smaller verdict from the second jury.

The plaintiff has thus eaten his cake by agreeing to the remittitur during the second trial. As his action at that late date would not have been accepted by the court without the consent of the defendant, we must consider it tantamount to a settlement. While the parties' right to appeal was reserved, we see no reason why plaintiff should be allowed such an advantage. By saying that he reserved the right to appeal, the plaintiff cannot thereby make appealable an order otherwise unappealable. Cf. *Estate of Sanford v. Commissioner of Internal Revenue*, 308 U.S. 39, 50–51, 60 S.Ct. 51, 58–59, 84 L.Ed. 20, 26–27 (1939).

Plaintiff argues that judicial economy would be better served by allowing for immediate appeal from an order of remittitur and thereby avoiding the necessity of a second trial. We disagree. Evans' argument is premised upon the faulty proposition that most remittiturs are in fact rejected. Although no hard data is available, experience shows the opposite to be the case. An order of remittitur frequently provides the means for ending the case by acceptance of the remittitur and payment of the judgment. The trouble and expense of a new trial are therefore eliminated.

The risks of a verdict less than the amount to which the remittitur order has reduced the plaintiff's recovery are obviously calculated to induce most reasonable plaintiffs to accept the remittitur and call it a day. Such risks are real as trial judges are loathe to reduce a jury award unless the verdict reaches an amount considerably in excess of what is reasonable. Indeed, the amount the trial judge estimates as acceptable is denominated an outside figure, so that even that figure is one beyond what the trial judge would have found, absent a jury. This analysis is supported by the fact that in only a very small percentage of appeals in which the propriety of the remittitur order is passed on does the court of appeals find such order to be an abuse of discretion. E. g. *Reinertsen v. Rogers*, supra.

And in the minority of cases where the second trial goes to a verdict, the action of the second jury is a useful and pertinent measure for the court of appeals of the propriety of the remittitur after the first trial. *Reinertsen* supra.

In contrast to the present situation, were we to adopt Evans' position there would be nothing whatsoever to deter appeal from a remittitur accepted under protest. Even if unsuccessful, the plaintiff would be guaranteed a minimum verdict. Litigation would thus likely be extended, rather than shortened as Evans suggests.

■ Consequently, we see no reason to change or modify the long standing rule of this circuit that an order for a new trial, which may or may not be accompanied by a provision for remittitur, as in this case, is not a final order and therefore is not appealable. Cf. *Compagnie Nationale Air France v. Port of New York Authority*, 427 F.2d 951 (2 Cir. 1970). We recognize but cannot agree with the contrary practice of the Fifth Circuit. See e. g. *United States v.*

*1160.96 Acres of Land*, 432 F.2d 910 (5 Cir. 1970).[1]

The plaintiff has caused the defendant's attendance at a retrial, at which a jury was picked, and some evidence was taken. Evans thereby elected to avoid the entry of any final judgment in the first trial. By choosing instead to accept the remittitur in the midst of the second trial, albeit simultaneously attempting to reserve any right to appeal, he must be held to have consented to the remittitur. As we have stated above, the attempted reservation of a right to appeal cannot create a right which we have clearly and continuously held to be non-existent.

The appeal is dismissed.

1. For a critical analysis of the Fifth Circuit's current practice, see generally, *Reinertsen*, supra at 534 n.2. See also 6A Moore, ¶ 59.05[3], at 59–63. *But see* 44 Fordham L.R. 845 (1976).