**Francis X. DONOVAN, Plaintiff-Appellant,**

v.

**PENN SHIPPING CO, INC. and Penn Trans Co., Inc., Defendants-Appellees.**

**No. 768, Docket 74–2694.**

United States Court of Appeals, Second Circuit.

Argued April 12, 1976.

Decided June 8, 1976.

Paul C. Matthews, New York City, for plaintiff-appellant.

Thomas M. McCaffrey, New York City (Darby, Healey & Stonebridge and Thomas H. Healey, New York City, on the brief), for defendants-appellees.

Before LUMBARD, HAYS and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

This case squarely presents for resolution a procedural question which has been the subject of extended discussion in several recent opinions of this court. In seeking review of a $65,000 judgment in his favor, entered in the Southern District on August 6, 1975 following a two day trial before Judge Gurfein and a jury, Francis X. Donovan urges that we modify the well established rule in this circuit and permit direct appeal from orders of remittitur accepted "under protest." We disagree with this suggestion.

Rather, having carefully weighed the competing policy considerations we remain convinced of the soundness of our traditional practice. If Donovan objected to Judge Gurfein's reduction of the jury's verdict, his proper recourse was to refuse the remittitur and insist upon the second trial to which he was entitled. Had he done so, the interlocutory nature of that choice would be readily apparent. Having chosen instead to accede to the remittitur, albeit reluctantly, Donovan is bound by his decision just as if he had reached a settlement with his adversary. The appeal is accordingly dismissed.

On June 4, 1970, while employed by the appellees as a seaman on the SS PennSailor, appellant slipped on wet paint and fell, suffering a colles fracture of the right wrist

plus a dislocation and chip fracture of the right elbow. When the ship docked two hours later, Donovan was taken in a waiting ambulance to the Marine Hospital on Staten Island. There, the fractured wrist was reduced, the elbow put back into joint and a cast placed on the right arm. Appellant was fifty years old at the time of his accident.

Following a convalescence of approximately six months, Donovan returned to work on December 1, 1970, having been declared "fit for duty" by the Brighton Public Health Service. Despite this certification, which evidenced a medical appraisal that appellant was capable of resuming his full and normal responsibilities, Donovan indicated at trial that he has been losing 35 to 40 hours of overtime per week since his return as a direct result of his weakened condition. In addition, expert testimony below established that Donovan has suffered a loss of grip in his right hand and a diminution in mobility of his right wrist and elbow. Moreover, there is general agreement that, in the words of appellees' lawyer, the wrist has healed "off center."

In compensation for the injury which he incurred, the pain which he experienced and the earnings which he has been and will be denied, the jury awarded Donovan $90,000 in damages. Appellees then promptly moved to set aside the verdict as excessive. In an opinion rendered on August 6, 1974, Judge Gurfein granted the motion, held the award to be beyond that reasonably allowable and ordered a new trial unless appellant consented to a remittitur of $25,000.

For nearly one year appellant mulled his alternatives and the case remained in a state of limbo. Finally, Donovan submitted ex parte to the district court a proposed order which noted his acceptance "under protest" of the reduced verdict of $65,000 and purported to preserve his "right to appeal therefrom." This language was adopted by Judge Werker[1] and embodied in the judgment entered on August 6, 1975. Predictably, this appeal followed soon after. Appellant contends, inter alia, that the remittitur to which he agreed was based upon arithmetic miscalculation and represented an abuse of the trial judge's discretion. We hold, however, that Donovan's acceptance of the remittitur precludes his present attack upon it.

Little would be gained by repeating what we so recently and at length considered in *Reinertsen v. George W. Rogers Construction Corp.,* 519 F.2d 531 (2d Cir. 1975) and *Evans v. Calmar,* 534 F.2d 519 (2d Cir., 1976). Suffice to say that we disagree with appellant's basic contention that already over-extended judicial resources would better be husbanded by permitting immediate appeal from orders of remittitur. Were such a course available, a plaintiff would have nothing to lose by accepting a remittitur "under protest," thereby guaranteeing himself a minimum verdict, and then proceeding to the court of appeals in an effort to restore the sum which had been disallowed by the district judge.[2] The proliferation of appeals would be the inevitable consequence.

In contrast, experience has demonstrated that the interest in judicial administration is well served by the present practice of treating orders of remittitur as interlocutory and therefore unappealable. See *Woodworth v. Chesbrough,* 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005 (1917); 9 J. Moore, Federal Practice ¶ 203.06, at 721 n. 31. As appellant conceded during oral argument, most plaintiffs now accept the remittitur thus necessitating a second trial in only a

---

1. Judge Werker was assigned to the case upon Judge Gurfein's elevation to the Court of Appeals.

2. While some cost is undeniably involved in appealing a remittitur order, the incremental expense is relatively small in view of the fact that the parties will undoubtedly have already prepared and submitted memoranda of law to the district court. Whatever effort is required to revise these papers is, moreover, overshadowed by the possible return if the jury verdict is reinstated. We therefore see no merit in the argument that attorneys operating on a contingency fee basis would be reluctant to invest the additional time and energy needed to obtain direct review of the remittitur were an immediate appeal permitted.

small minority of cases. Finality and repose are achieved precisely because "[t]he risks of a verdict less than the amount to which the remittitur order has reduced the plaintiff's recovery are . . . calculated to induce most reasonable plaintiffs to accept the remittitur and call it a day," *Evans*, 534 F.2d at 522.

That such risks are real was graphically illustrated in *Reinertsen*, where the first jury returned a verdict of $75,000, the order of remittitur reduced the award to $45,000 and the second jury granted just $16,000. The prejudice to the defendant in allowing the plaintiff to bypass the second trial and obtain direct review of the remittitur is therefore obvious. The defendant's right to have a second jury consider the issue of damages, although conditioned upon the plaintiff's having first rejected the remittitur, is nonetheless a valuable one. It should not be lightly disregarded. Furthermore, in those rare instances where a second trial is required, it provides yet an additional gauge by which the court of appeals can judge the propriety of the remittitur.

We therefore answer the question left open in *Reinertsen* and alluded to although not decided in *Evans,* by holding that a plaintiff who accepts an order of remittitur, with or without qualifications, is bound by his acceptance and may not later challenge the order by seeking review in the court of appeals. Donovan's attempted reservation of a right to appeal can not and does not alter this rule of law. Cf. *Sanford v. Commissioner,* 308 U.S. 39, 50–51, 60 S.Ct. 51, 84 L.Ed. 20 (1939).

Appeal dismissed.

FEINBERG, Circuit Judge (dissenting):

Plaintiff Francis X. Donovan obtained a jury verdict of $90,000 in his personal injury action against defendants-appellees. By utilizing the device of a remittitur, then District Judge Gurfein reduced plaintiff's recovery to $65,000. Plaintiff appeals, claiming that since he accepted the reduced judgment "under protest," he should have an opportunity to argue to us that the trial judge erred in reducing the verdict. We must, therefore, reach the issue that only a year ago, in *Reinertsen v. George W. Rogers Construction Corp.,* 519 F.2d 531 (2d Cir. 1975), we discussed at some length, but did not find it necessary to decide.[1] That issue is whether to change the judge-made rule that the only way a plaintiff can challenge a judge's use of a remittitur is by first undergoing the risk, delay and expense of a second trial. The majority opinion holds plaintiff to that burdensome course. I respectfully dissent, since I believe that the "under protest" rule that plaintiff seeks is a reasonable way to preserve his right to protest allegedly undue interference with jury verdicts by trial judges.

My principal problem with the majority opinion is that, in adhering to the traditional rule, it gives inadequate consideration to all the interests involved. The majority's basic premise appears to be that the primary interest of the courts is the efficiency of judicial administration. This is not so. In civil matters like this one, courts exist to resolve disputes between litigants. When a plaintiff claims that he has been injured because of the fault of a defendant, the court proceeding is designed to give the plaintiff a fair opportunity to prove his contention and to obtain adequate compensation, if he is correct. Conversely, a defendant is afforded a fair chance to meet a plaintiff's contentions head-on. The interest of the courts in efficient administration, though important, is not superior to the interests of the plaintiff or of the defendant. Therefore, determination of plaintiff's right to appeal now should not depend, as the majority apparently believes, solely on whether there would be a "proliferation of appeals" as an "inevitable consequence"—a

1. For recent law review comment, see Note, Remittitur Practice in the Federal Courts, 76 Colum.L.Rev. 299 (1976); Note, Remittitur Review: Constitutionality and Efficiency in Liquidated and Unliquidated Damage Cases, 43 Chi. L.Rev. 376 (1976) ("Chicago Note"); Recent Developments, 44 Fordham L.Rev. 845 (1976); Note, Appealability of Judgments Entered Pursuant to Remittiturs in Federal Courts, 1975 Duke L.J. 1150 (1975) ("Duke Note").

prediction, incidentally, which I would not make.[2]

A much more compelling consideration is whether the rule that a plaintiff cannot appeal from a remittitur, even one accepted "under protest," works a significant and unjustifiable hardship on him. It must be emphasized that consideration of this question starts with a plaintiff who has recovered a substantial verdict from a jury, substantial enough to have been reduced by a judge (in this case from $90,000 to $65,000). Plaintiff's right to the jury verdict has a constitutional basis, and is not lightly to be ignored. Granting a new trial unless a plaintiff accepts a remittitur is an attempt by a judge to reduce a jury verdict because he feels that it is excessive. To this extent, it is presumably an invasion of the jury's prerogative and the right of the plaintiff to its determination, and can be justified only in limited situations. A common formulation is that a trial judge should only interfere with a jury judgment on damages

> if the amount awarded is so excessive as to compel the conclusion that it is the result of passion or prejudice or is shocking to the "judicial conscience." [Footnotes omitted.]

*Dagnello v. Long Island R. R.,* 193 F.Supp. 552, 553 (S.D.N.Y.1960), aff'd, 289 F.2d 797 (2d Cir. 1961); cf. *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 409 F.2d 145, 147–49 (1969). This statement assumes that judges are aware of a great many verdicts and that their consciences, in this context at least, are not too easily

shocked. The formulation reflects an uneasiness over any tampering with a jury verdict. Cf. *Dimick v. Schiedt,* 293 U.S. 474, 484, 55 S.Ct. 296, 79 L.Ed. 603 (1934).[3]

When a remittitur is used, however, the coercive effect upon a plaintiff is very great. He is offered a reduced verdict right away. Should he refuse, in order to regain the full amount of the verdict he must first undergo the delay and trouble of a second trial, perhaps obtain a lower verdict,[4] and then try to persuade an appellate court that the trial judge erred in reducing the first verdict. It should be no surprise that, as the majority puts it, "most plaintiffs now accept the remittitur thus necessitating a second trial in only a small minority of cases." If this is so,[5] it proves appellant's point, which is that the present system deprives him of any real opportunity to challenge the judge's use of a remittitur.[6]

On this analysis, then, the problem seems more difficult to me than it does to the majority. Why should we allow a plaintiff to be coerced into giving up his chance to challenge an alleged invasion of the jury's prerogative? I have difficulty in finding a satisfactory answer to that question. I recognize that the weight of precedent is against plaintiff. The authorities are discussed in *Reinertsen v. George W. Rogers Construction Corp.,* supra, in which we indicated our reluctance "to depart from the traditional rule." 519 F.2d at 536. Such an attitude is not unseemly for an inferior federal court but, as Justice Holmes pointed out over 75 years ago, it cannot· be the

---

2. The "proliferation" could only be in cases where a remittitur is ordered. Neither the majority nor I can cite hard statistics on the number of such cases in this circuit in any year, but my experience suggests that the total is not great.

3. On the question of the constitutionality of a remittitur, the Court noted:

> In the light reflected by the foregoing review of the English decisions and commentators, it, therefore, may be that if the question of remittitur were now before us for the first time, it would be decided otherwise.

Id. For the view that remittitur is "an unconstitutional practice" in personal injury actions like this one, see Chicago Note at 400.

4. Logically, if plaintiff secured any verdict higher than that deemed proper by the trial judge in his original order of remittitur, the trial judge would again set it aside, thus putting plaintiff on a treadmill until he obtained a lower verdict, accepted the remittitur or settled the case. See Chicago Note at 376.

5. Here, too, we have no hard statistics, but my educated guess would be the same as the majority's.

6. See Chicago Note at 380:

> . . . the whole rationale behind the remittitur practice is to pressure the plaintiff into taking less than that which a jury has awarded him.

whole answer.[7] Moreover, as we noted in *Reinertsen,* the authorities are not wholly one way. The Fifth Circuit, the busiest of all, has adopted the rule that appellant seeks. See, e. g., *Wiggs v. Courshon,* 485 F.2d 1281 (1973); *United States v. 1160.96 Acres of Land,* 432 F.2d 910 (1970); 9 J. Moore, Federal Practice ¶ 203.06, at 722 (2d ed. 1975); 11 C. Wright and A. Miller, Federal Practice and Procedure, § 2815, at 105–06 & n.10 (1973).

There is also the question whether a new rule is barred by various Supreme Court decisions, referred to in *Reinertsen,* supra, 519 F.2d at 534 & n.2.[8] The Fifth Circuit, however, has apparently assumed that these cases are distinguishable or have somehow lost their force in the many decades since they were decided.[9] At this point, I would be willing to accept the apparent assumption of the Fifth Circuit as correct, at least until such time as we are advised by higher authority that it is not.

Another obstacle to modifying the present rule might be the strong federal policy against piecemeal appeals embodied in the "final judgment" rule. However, while a remittitur accepted "under protest" might not be the traditional final judgment, the Fifth Circuit has pointed out that allowing a plaintiff in that situation to appeal is in accord with federal policy.

> If the remittitur was in order, the plaintiff has agreed to it, the judgment would be final, and no new trial would be required. If the trial court erred in ordering the remittitur, the appellate court could set aside the judgment and order that a judgment be entered on the jury verdict. Again, no new trial would be necessary to conclude the litigation.

*Wiggs v. Courshon,* supra, 485 F.2d at 1283. In *Reinertsen,* supra, 519 F.2d at 535, we noted that there was,

of course, another possibility, namely, that the appellate court will reduce the remittitur. But the plaintiff's consent to the larger remittitur should certainly cover the smaller. Plaintiff contends that, with the policy of the final judgment rule thus satisfied, the interests of justice will be served by allowing an immediate appeal under these circumstances. If the plaintiff succeeds, the verdict will be restored in whole or in part without need for the parties to undergo a second trial. If the plaintiff fails, there will be judgment within what the trial judge considered to be the range of reason.

Therefore, it seems that appellant's proposed rule would not offend the policy of the final judgment rule.

On the other hand, there is the legitimate interest of a defendant to be considered. We also recognized in *Reinertsen* that a defendant can reasonably argue that

> the jury, if not prejudiced, at least must have been wrongheaded, and that [he] should not be placed in a position where if the remittitur is held proper, a plaintiff who is unwilling to accept it without an appeal will always get the maximum that a jury could reasonably fix rather than what a wiser jury might in fact award.

*Id.* Although there is some force to this argument, I do not think it is sufficient to justify the present rule. If the judge's remittitur is upheld on a plaintiff's direct appeal, the already reduced jury verdict is, by hypothesis, a justifiable one. A defendant, like a plaintiff, is entitled to no more than that. Moreover, the present practice concerning remittiturs already favors defendants. A defendant may immediately appeal from the trial judge's refusal to order a new trial or a remittitur, see, e. g.,

---

**7.** "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV." Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897).

**8.** *Woodworth v. Chesbrough,* 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005 (1917); *Koenigsberger v. Richmond Silver Mining Co.,* 158 U.S. 41, 15

S.Ct. 751, 39 L.Ed. 889 (1895); *Lewis v. Wilson,* 151 U.S. 551, 14 S.Ct. 419, 38 L.Ed. 267 (1894); and *Kennon v. Gilmer,* 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889).

**9.** See Chicago Note at 377–81; Duke Note at 1155–61.

*Dagnello v. Long Island R. R.,* supra,[10] or even from the inadequacy of a remittitur that was granted and accepted.[11] But when the judge orders a remittitur, a plaintiff is not now given the same opportunity. Furthermore, a trial judge can reduce a plaintiff's verdict by the device of remittitur; the judge, however, cannot use additur to increase it. See *Dimick v. Schiedt,* supra, 293 U.S. at 495, 55 S.Ct. 296 (Stone, *J.,* dissenting). Changing the present rule to allow a plaintiff to appeal a remittitur "under protest" will reduce the imbalance.[12]

On balance, then, I find no persuasive justification for the present rule except the economy of judicial effort stressed by the majority. We cannot even be sure of that, for we have no hard statistics as to how many remittiturs are rejected, thereby causing a second trial. We do know that in cases like *Reinertsen* the proposed rule would have avoided the second trial. Moreover, as indicated above, we do not know how many additional appeals will result from allowing a plaintiff, after accepting a remittitur under protest, to appeal from the judge's reduction of the verdict. And such appeals, whatever their number, would not usually require enormous expenditure of time and effort by lawyers or judges, although there will be exceptions.

In any event, I do not think that the interest in judicial administration should, in this instance, be controlling. I would change the rule and allow an appeal by a plaintiff who gives up his right to a new trial and accepts a remittitur "under protest." Otherwise, he is being coerced for insufficient reason into giving up a jury verdict that may be justifiable.

Therefore, I dissent.

10. See also authorities collected in Chicago Note at 381 n.22.

11. E.g., *Princemont Construction Corp. v. Smith,* 140 U.S.App.D.C. 111, 433 F.2d 1217 (D.C.Cir. 1970).

12. Cf. Carrington, the Power of District Judges and the Responsibility of Courts of Appeals, 3 Ga.L.Rev. 507, 526 (1969) (" . . . the dubious and one-sided character of the whole process of regulating the size of verdicts . . . ").