EDWARD COHEN *v.* YALE-NEW HAVEN
HOSPITAL ET AL.
(SC 16484)

Sullivan, C. J., and Borden, Vertefeuille, Zarella and Rush, Js.

Argued January 16—officially released July 9, 2002

*Steven J. Errante*, with whom was *Eric P. Smith*, for the appellant-appellee (plaintiff).

*Jeffrey R. Babbin*, with whom was *Kim E. Rinehart*, for the appellee-appellant (defendant Barry M. Kacinski).

*Opinion*

VERTEFEUILLE, J. The principal issue in this appeal is whether the plaintiff, having accepted a remittitur with regard to one component of noneconomic damages in a negligence action, may nevertheless appeal the propriety of the trial court's rulings with regard to other components of noneconomic damages. We also address the issue raised in the defendant's cross appeal, namely, whether the trial court properly denied the

defendant's motion for judgment notwithstanding the verdict. We conclude that the plaintiff may not appeal from the acceptance of the remittitur, and that this court is therefore without jurisdiction to entertain the plaintiff's appeal. We also conclude that the trial court properly denied the defendant's motion for judgment notwithstanding the verdict.

The plaintiff, Edward Cohen, brought this medical malpractice action against the defendant Barry M. Kacinski, an oncologist, in 1994, alleging a single count of negligence.[1] A jury awarded the plaintiff noneconomic damages in the amount of $2,000,000 and the trial court later set aside $600,000 of the verdict as excessive and against the weight of the evidence. The trial court also ordered the plaintiff to remit $1,025,000 of the remaining verdict or submit to a new trial on the issue of damages. The plaintiff accepted the remittitur and judgment was rendered against the defendant in the amount of $375,000. Thereafter the plaintiff appealed from the judgment, and the defendant cross appealed, to the Appellate Court. We transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The jury reasonably could have found the following facts. In September of 1992, the plaintiff contacted the defendant concerning pain that the plaintiff was experiencing in the area of his upper left thigh. The plaintiff, who had a history of cancer in his left leg, was con-

---

[1] Also named as defendants by the plaintiff were: Yale-New Haven Hospital; Yale University School of Medicine; Yale University School of Medicine, Office of Professional Services; Hunter Radiation Therapy Clinic; Yale Diagnostic Radiology; Lee D. Katz; and Marc E. Newberg. The plaintiff's claims against Yale University School of Medicine, Office of Professional Services, Hunter Radiation Therapy Clinic, and Yale Diagnostic Radiology were dismissed for lack of personal jurisdiction, and the plaintiff withdrew his claims against Yale-New Haven Hospital, Yale University School of Medicine, Katz and Newberg before trial. Because Kacinski was the sole remaining defendant at the time of trial, we refer to him as the defendant.

cerned that the pain might represent a recurrence of the cancer. On September 17, 1992, the plaintiff was examined by the defendant, who was an attending radiation therapist for Hunter Radiation Therapy Clinic; see footnote 1 of this opinion; when the defendant made arrangements for the plaintiff to undergo a magnetic resonance imaging (MRI), which was performed on September 21 at Yale-New Haven Hospital by Lee Katz, a radiologist. Katz, in his report to the defendant, stated that the MRI revealed lesions that probably did not represent a recurrence of cancer, but that a conclusive diagnosis could not be made at that time. Accordingly, Katz recommended that the plaintiff undergo follow-up testing within six to eight weeks.

When the plaintiff contacted the defendant to learn the results of the MRI, the defendant told him that there were shadows on the MRI but that there was nothing to worry about. The defendant said nothing to the plaintiff about the possibility that the shadows might represent a recurrence of the cancer or that follow-up testing was necessary.

In May, 1993, the plaintiff again experienced pain in his left leg and he contacted the defendant. Following an MRI and a needle biopsy, the plaintiff was diagnosed with a high-grade malignancy in his left leg. The plaintiff thereafter was treated by Samuel Singer, an oncologist in Boston, Massachusetts, and his course of treatment included surgery, chemotherapy and brachytherapy.[2]

The plaintiff subsequently had two recurrences of cancer, in 1995 and 1997. As a result, he underwent disfiguring surgery and lost substantial use of his left leg due to the deterioration of his sciatic nerve, which had been damaged by the use of brachytherapy in treatment of his cancer.

---

[2] Brachytherapy involves the insertion of tubes, filled with radiation-emitting pellets, into tissue surrounding a cancerous area.

The plaintiff claimed at trial that the defendant was negligent in failing to schedule follow-up testing in a timely manner after the September, 1992 MRI. He alleged that, as a result of this negligence, he was forced to undergo a course of treatment that included brachytherapy and chemotherapy. The plaintiff claimed that the brachytherapy treatment damaged his sciatic nerve, resulting in the loss of substantial use of his left leg, and that the chemotherapy caused him to be ill. He also claimed that the defendant's negligence increased the plaintiff's risk of a recurrence of cancer and his risk of mortality.

The case was bifurcated in its submission to the jury. The issue of liability was submitted first through the use of a single interrogatory asking whether the plaintiff had proved, by a preponderance of the evidence, that the defendant violated the prevailing standard of care in September, 1992. The jury answered that interrogatory in the affirmative.

The issue of damages was then submitted through the use of three interrogatories asking whether the plaintiff proved by a preponderance of the evidence that, as a result of the defendant's negligence, the plaintiff: (1) underwent brachytherapy treatment that damaged his sciatic nerve and impaired the function of his left leg; (2) became ill from chemotherapy in July, 1993; and (3) had an increased risk of dying during the following three and one-half year period. The plaintiff had requested a fourth interrogatory on the issue of whether the plaintiff had suffered an increased risk of a recurrence of cancer as a result of the defendant's negligence. The trial court denied that request, however, concluding that the plaintiff had not presented sufficient evidence upon which to submit that question to the jury.

The jury answered the first and third interrogatories regarding damages in the affirmative, awarding dam-

ages of $1,400,000 and $600,000, respectively. The jury answered the second interrogatory in the negative.

The defendant thereafter moved to set aside the verdict, for a new trial, for judgment notwithstanding the verdict and for a remittitur. The defendant claimed, inter alia, that the plaintiff had failed to prove that, but for the defendant's negligence, the plaintiff's tumor would have been diagnosed and treated without the use of brachytherapy. The defendant further claimed that the plaintiff had failed to prove by expert medical testimony that the defendant's conduct increased the plaintiff's risk of mortality.

The trial court granted the defendant's motion to set aside the verdict on the increased risk of mortality issue, finding that the plaintiff had not presented sufficient evidence from which a reasonable jury could find that the plaintiff suffered an increased risk of mortality as a result of the defendant's negligence. The trial court also granted the defendant's motion for remittitur, and ordered the plaintiff to remit $1,025,000 of the jury's award for damage to the plaintiff's sciatic nerve or agree to a new trial limited to damages on that issue. The plaintiff accepted the remittitur and judgment was rendered against the defendant in the amount of $375,000. The trial court denied all other relief requested by the defendant. This appeal and cross appeal followed. Further facts will be set forth as necessary.

I

In this appeal, the plaintiff claims that the trial court improperly: (1) failed to charge the jury on the increased risk of a recurrence of cancer; and (2) set aside the plaintiff's verdict on the issue of whether the defendant's negligence increased the plaintiff's risk of mortality. Before we reach the merits of the plaintiff's claims,

however, we first must decide whether this court has jurisdiction to entertain the plaintiff's appeal.[3]

Specifically, we must decide whether the plaintiff, having accepted a remittitur on one aspect of damages, may nevertheless appeal from the trial court's disposition of other aspects of the damage award. The defendant claims that this court does not have jurisdiction to entertain the plaintiff's appeal, arguing that the plaintiff may not accept the benefits of the remittitur, which resulted in a judgment of $375,000 against the defendant, while at the same time challenging other aspects of the judgment. The plaintiff argues in response that, because he is not contesting the propriety of the remittitur itself, the rule barring appeals from the acceptance of a remittitur is inapplicable. We agree with the defendant that the plaintiff is precluded from appealing from the judgment that resulted from his acceptance of the remittitur. Accordingly, we conclude that this court does not have jurisdiction to entertain the merits of the plaintiff's claims.

We begin by setting forth the standard of review that governs our examination of this issue. The issue of whether the plaintiff may appeal from the judgment rendered after his acceptance of a remittitur implicates the subject matter jurisdiction of this court, and therefore presents an issue of law. Accordingly, our review is plenary. See *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999).

An order of remittitur is the result of a trial court's conclusion that a jury verdict was excessive. When faced with an order of remittitur, a plaintiff is presented

---

[3] The defendant filed a motion to dismiss the plaintiff's appeal for lack of subject matter jurisdiction while this appeal was pending in the Appellate Court. The Appellate Court denied the motion. After the appeal was transferred to this court, the parties briefed the jurisdictional issue for the consideration of this court.

with a choice of accepting the remittitur, with the result that a reduced judgment is entered in the plaintiff's favor, or rejecting the remittitur, in which case the jury's award is set aside and a new trial is ordered. See General Statutes §§ 52-228 and 52-228b.

In the present case, pursuant to the defendant's motion for remittitur, the trial court determined that the jury's award of $1,400,000 for damage to the plaintiff's sciatic nerve was excessive. Accordingly, the trial court ordered the plaintiff either to remit $1,025,000 or submit to a new trial with respect to damages on that issue. The plaintiff accepted the remittitur and, as a result, judgment was rendered against the defendant in the amount of $375,000. On appeal, however, the plaintiff seeks to retain that judgment while at the same time attempting to procure additional damages pursuant to a new trial on the issue of an increased risk of a recurrence of cancer and a reinstatement of the jury's verdict on the issue of an increased risk of mortality.

This court last considered the issue of whether a plaintiff may appeal from the judgment rendered upon the plaintiff's acceptance of a remittitur in *Civiello* v. *Owens-Corning Fiberglass Corp.*, 208 Conn. 82, 544 A.2d 158 (1988). The plaintiff in *Civiello*, after agreeing to remit part of the jury's verdict, appealed from the trial court's determination that the plaintiff was not entitled to interest on the judgment pursuant to General Statutes § 52-192a, the offer of judgment statute. Id., 83–84. The defendant claimed in this court that the plaintiff, having accepted the remittitur, was precluded from appealing from the trial court's conclusion that the plaintiff was not entitled to interest. Id. This court acknowledged that the defendant's assertion was correct as a general proposition of law. This court stated: "[T]he United States Supreme Court more recently has resolved conflicts among the federal courts in favor of adhering to '[a] line of decisions stretching back to 1889'

holding that a plaintiff cannot, by accepting the order under protest, 'appeal the propriety of a remittitur order to which he has agreed.' *Donovan* v. *Penn Shipping Co.*, 429 U.S. 648, 649, 97 S. Ct. 835, 51 L. Ed. 2d 112 (1977). The [Supreme Court] upheld the Second Circuit Court of Appeals in dismissing the appeal for lack of a final judgment. *Donovan* v. *Penn Shipping Co.*, 536 F.2d 536 (2d Cir. 1976). The Second Circuit majority opinion, in addition to reliance upon precedent, had stressed three grounds in support of its position: (1) '[t]he proliferation of appeals would be the inevitable consequence' of permitting a plaintiff, who 'would have nothing to lose' after guaranteeing himself a minimum verdict, to appeal under protest in an attempt to restore the original verdict; id., 537; (2) the policy against piece-meal appeals embodied in the final judgment rule would be violated by sanctioning an appeal from a conditional order for a new trial; and (3) 'in those rare instances where a second trial is required, it provides yet an additional gauge by which the court of appeals can judge the propriety of the remittitur.' Id., 538." *Civiello* v. *Owens-Corning Fiberglass Corp.*, supra, 86–87.

This court ultimately found the rule set forth in *Donovan* to be inapplicable, however, because we agreed with the plaintiff that the refusal to award interest was a separate determination from the judgment rendered upon the plaintiff's acceptance to the remittitur. Id., 87–88. This court's conclusion in *Civiello* was in accordance with well established authority holding that the *Donovan* rule does not prevent the appeal of issues that are separate or distinct from the issue on which a plaintiff has accepted a remittitur. See, e.g., *Ohio-Sealy Mattress Mfg. Co.* v. *Sealy, Inc.*, 585 F.2d 821, 840 (7th Cir. 1978), cert. denied, 440 U.S. 930, 99 S. Ct. 1267, 59 L. Ed. 2d 486 (1979); *Call Carl, Inc.* v. *BP Oil Corp.*, 554 F.2d 623, 626–27 (4th Cir.), cert. denied, 434 U.S. 923, 98 S. Ct. 400, 54 L. Ed. 2d 280 (1977).

Resolution of the issue before us therefore turns on whether the issues that the plaintiff seeks to raise on appeal are separate and distinct from the issue upon which he accepted the remittitur. We conclude that the policies underlying the *Donovan* rule, and its treatment in other jurisdictions, mandate the conclusion that these issues are not separable from the issue on which the plaintiff accepted the remittitur. Accordingly, the plaintiff's appeal must be dismissed for lack of subject matter jurisdiction.

The plaintiff seeks review on appeal of issues of non-economic, compensatory damages that arose out of the same cause of action, and are of the same type, namely, noneconomic, as the damages on which judgment was rendered pursuant to the plaintiff's acceptance of the remittitur. Specifically, the plaintiff seeks to obtain additional noneconomic, compensatory damages for the increased risk of mortality and the increased risk of a recurrence of cancer. The plaintiff accepted a remittitur of noneconomic, compensatory damages for harm to his sciatic nerve, which resulted in the substantial loss of use of his left leg. There is, necessarily, evidence common to these issues, making them particularly ill-suited for consideration by different juries because of the possibility of overlapping verdicts. For example, if we were to review the merits of the plaintiff's claims and resolve them in his favor, a second jury would consider an award of additional noneconomic, compensatory damages resulting from the plaintiff's increased risk of a recurrence of cancer as a result of the defendant's negligence. The second jury might award damages for further loss of use of the plaintiff's leg from the increased risk of a recurrence of cancer without an understanding of the first jury's award in this regard. It is precisely this kind of piecemeal, and possibly overlapping, litigation that the *Donovan* rule is intended to prevent. Under these circumstances, the fact that the

trial court separated these components of noneco-nomic, compensatory damages through the use of inter-rogatories in an attempt to aid the jury is not sufficient to render them separable for the purposes of appeal.

Our conclusion is buttressed by the decisions of several United States Circuit Courts of Appeal that have applied the rule set forth in *Donovan* to bar appeals in factual scenarios similar to the one in the present case. These courts uniformly have held that a plaintiff, having accepted a remittitur on the issue of compensatory damages, is barred under *Donovan* from appealing issues relating to other types of damages arising out of the same cause of action. See *Sulzer Carbomedics, Inc.* v. *Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 460–61 (5th Cir. 2001) (plaintiff's appeal barred under *Donovan* because punitive damages issue not separable from compensatory damages issue upon which plaintiff accepted remittitur); *Anderson* v. *Roberson*, 249 F.3d 539, 543 (6th Cir. 2000) (same); *Utah Foam Products Co.* v. *Upjohn Co.*, 154 F.3d 1212, 1215–16 (10th Cir. 1998) (same); *Denholm* v. *Houghton Mifflin Co.*, 912 F.2d 357, 359–60 (9th Cir. 1990) (plaintiff's appeal barred under *Donovan* because issues of damages for lost royalties and harm to reputation not separable from issue of compensatory damages on which plaintiff accepted remittitur).

Indeed, the rationale for barring an appeal from a remittitur applies with greater force in the present case than in those cases involving punitive damages. To prove a claim for punitive damages, a party must prove malice or recklessness in addition to the facts required for compensatory damages. See *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 778, 717 A.2d 150 (1998). The requirement of evidence in addition to that necessary to prove compensatory damages makes the issue of punitive damages at least arguably separable for the purposes of appeal under the *Donovan* rule.

Because, however, the weight of authority has held that punitive damages are *not* separable for the purposes of the *Donovan* rule, then, a fortiori, the damages in the present case clearly are not separable, where all of the damages at issue are various components of noneconomic, compensatory damages.

Our conclusion draws further support from a consideration of judicial economy. As this court noted in *Civiello*, judicial economy is one of the primary policies sought to be furthered by the rule barring a plaintiff from appealing the propriety of an accepted remittitur. The plaintiff in the present case accepted a remittitur on one component of damages and wants to retain the judgment rendered thereon, while at the same time appealing from the actions of the trial court with respect to other aspects of the same type of damages, hoping to increase the damage award. If we were to entertain the plaintiff's appeal under these circumstances, it is likely that a proliferation of appeals would result in similar cases because a plaintiff, having secured a minimum judgment, would have nothing to lose by taking an appeal in an effort to secure additional damages. See *Donovan* v. *Penn Shipping Co.*, supra, 429 U.S. 649.

Finally, we note that our conclusion is consonant with the goal of finality sought to be served by the use of remittiturs. "An order of remittitur frequently provides the means for ending the case by acceptance of the remittitur and payment of the judgment. The trouble and expense of a new trial are therefore eliminated." *Evans* v. *Calmar Steamship Co.*, 534 F.2d 519, 522 (2d Cir. 1976). "Finality and repose are achieved precisely because [t]he risks of a verdict less than the amount to which the remittitur order has reduced the plaintiff's recovery are . . . calculated to induce most reasonable plaintiffs to accept the remittitur and call it a day . . . ." (Citation omitted; internal quotation marks omitted.) *Donovan* v. *Penn Shipping Co.*, supra,

536 F.2d 538. Much of the remittitur's utility as a means of promoting finality would be lost if the plaintiff were permitted to appeal under the circumstances of this case.

Accordingly, we conclude that to challenge the decisions of the trial court on appeal, the plaintiff was required to decline the remittitur and appeal from the trial court's order granting a new trial. The plaintiff having failed to do so, his appeal is therefore dismissed.

## II

We turn now to the issue raised in the defendant's cross appeal, namely, whether the trial court improperly denied the defendant's motion for judgment notwithstanding the verdict in which he claimed that the plaintiff failed to prove that the defendant's negligence caused the plaintiff to undergo brachytherapy. We conclude that the trial court properly denied the defendant's motion.

At trial, the plaintiff claimed that as a result of the defendant's negligence, diagnosis of the malignant tumor in the plaintiff's left thigh was delayed. The plaintiff further claimed that as a result of this delay, he later was forced to undergo a course of treatment that included brachytherapy, which damaged his sciatic nerve and substantially impaired the function of his left leg.

Following the trial, the defendant filed a motion for judgment notwithstanding the verdict on this issue, claiming that the plaintiff had failed in his proof of causation in two ways. First, the defendant claimed that the plaintiff did not prove that but for the defendant's negligence, the plaintiff's cancer would have been diagnosed within a time frame that conceivably would have allowed the plaintiff to have been treated without brachytherapy. Second, the defendant claimed that,

even if the plaintiff had proved that the tumor would have been diagnosed in a timely manner, the plaintiff failed to prove that the defendant's negligence caused the plaintiff to undergo brachytherapy. The trial court denied the defendant's motion, concluding that the plaintiff had presented sufficient expert testimony for the jury to conclude that the plaintiff had met his burden of establishing causation on this issue. The defendant renews these two claims in this court.[4] We conclude that the defendant's claims are without merit and affirm the judgment of the trial court denying the defendant's motion for judgment notwithstanding the verdict.

We begin by noting that "[o]ur review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz*, 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 32, 761 A.2d 1268 (2000).

We first address the defendant's claim that there was insufficient evidence upon which the jury reasonably could have concluded that, absent the defendant's malpractice, the plaintiff's cancer would have been diagnosed within a time frame that would have permitted

---

[4] The defendant also claims that the plaintiff failed to prove that, even if the plaintiff's tumor had been timely diagnosed, surgery would have occurred by December, 1992. We decline to review this claim, however, because the defendant failed to raise it in the trial court. See *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000).

the plaintiff to be treated with surgery instead of brachytherapy.[5] Specifically, the defendant claims that there was insufficient evidence from which a jury could have concluded that follow-up testing subsequent to the September, 1992 MRI, if performed within the six to eight week time frame permitted by the standard of care, would have resulted in a definitive diagnosis. We conclude that the testimony of the plaintiff's expert witness, James Vogel, a medical oncologist, coupled with the defendant's testimony, provided a sufficient evidentiary basis from which the jury reasonably could have found that, absent the defendant's negligence, the tumor in the plaintiff's left thigh would have been diagnosed within six to eight weeks of the September, 1992 MRI.

At trial, the following colloquy occurred between the plaintiff's counsel and Vogel:

"[Plaintiff's Counsel]: Is it fair to say that the earliest that there *would* have been diagnosis and treatment would have been some six to eight weeks after September 21, 1992?

"[Vogel]: I think that's fair." (Emphasis added.)

We agree with the plaintiff that Vogel's answer, taken in the context of the question posed inquiring as to the earliest time that diagnosis *would* have taken place, was framed sufficiently in terms of probability such that the jury reasonably could have relied on it in finding that treatment would have occurred within six to eight weeks of the September, 1992 MRI.

The defendant, seizing upon the word "earliest" in the question posed by the plaintiff's counsel, claims that Vogel's testimony on this issue was purely speculative. We disagree. The defendant's claim improperly focuses upon the word "earliest" without reference to the remainder of the colloquy between the plaintiff's

---

[5] See footnote 2 of this opinion.

counsel and Vogel. As discussed previously, Vogel's testimony was framed sufficiently in terms of probability because his answer indicated that, as posed in the question, it was fair to say that the earliest there *would* have been diagnosis was six to eight weeks after the September, 1992 MRI.

The defendant's testimony further supported the jury's conclusion. The defendant testified that the MRI performed in September, 1992, was inconclusive because it was unclear whether certain lesions shown on that MRI were the result of injury due to physical exercise or, instead, represented a recurrence of cancer. He further testified that he told the plaintiff following the September, 1992 MRI that the results of the MRI were inconclusive and that the plaintiff should have follow-up testing in six to eight weeks.[6] When asked by his attorney why follow-up testing should occur within that time frame, the defendant responded: "If we waited six to eight weeks and this was simply an injury, the injury would have healed, it would have regressed . . . . However, if the lesions persisted or grew larger, the [computerized axial tomography (CAT)] scan *would have allowed a biopsy to be done without any difficulty at all.*" (Emphasis added.) The defendant's own testimony, therefore, was consistent with that of Vogel, the plaintiff's expert, on the issue of when diagnosis would

---

[6] At trial, the parties stipulated that the issue of whether the defendant breached the standard of care in this case turned solely on whether the jury credited the plaintiff's or the defendant's version of the substance of the conversation in which the defendant informed the plaintiff of the results of the September, 1992 MRI. The plaintiff testified that the defendant informed him that the MRI "had some shadows" but that "everything was fine." The plaintiff further testified that the defendant never informed him that follow-up testing was necessary. In contrast, the defendant testified that he informed the plaintiff that although the MRI did not appear to indicate a recurrence, follow-up testing was necessary to ensure that the lesions shown on the MRI were not tumors. The parties agreed that the standard of care in this case required that follow-up testing be scheduled within six to eight weeks of the September, 1992 MRI.

have occurred had follow-up testing been performed within the time frame called for by the standard of care. Construing the testimony of Vogel and the defendant in the light most favorable to the plaintiff, as we must; see *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 255 Conn. 32; we conclude that the evidence presented provided a sufficient basis from which a reasonable jury could have found that, absent the defendant's negligence, the plaintiff's tumor would have been diagnosed within six to eight weeks after the September, 1992 MRI.

We next address the defendant's claim that the jury reasonably could not have concluded that the defendant's negligence caused the plaintiff to undergo brachytherapy. More specifically, the defendant contends that because another of the plaintiff's expert witnesses, Singer, a surgical oncologist, testified on cross-examination that it would not have been a violation of the standard of care to administer brachytherapy even if the plaintiff's tumor had been diagnosed in a timely fashion, the jury could not have concluded reasonably that the administration of brachytherapy was caused by the defendant's negligence. In response, the plaintiff claims that the jury reasonably could have relied on Singer's testimony on direct examination in concluding that, absent the defendant's negligence, the plaintiff's tumor would have been treated without brachytherapy. We agree with the plaintiff.

On direct examination, Singer testified as follows:

"[Plaintiff's Counsel]: Doctor, *following the standard of care for surgical oncologists* as it existed in December of 1992 and assuming that the sciatic nerve and the closest point of the sarcoma were one centimeter apart, what would the standard of care have called for in terms of treatment?

"[Singer]: *We* would have treated this patient with a wide resection, the surgical resection alone, no chemotherapy and no radiation." (Emphasis added.)

We conclude that Singer's testimony on direct examination provided sufficient evidence from which a jury could have concluded that the plaintiff probably would have been treated without brachytherapy in December, 1992. As the trial court noted, the parties never explored whether the word "we" in the context of Singer's testimony was intended to refer to Singer's surgical group or to surgical oncologists in general. As previously noted, however, this court is obligated to view Singer's testimony in the light most favorable to sustaining the jury's verdict.

Singer further testified on direct examination that he would not have employed brachytherapy in treating the plaintiff in December, 1992, because "I wouldn't have taken the risk of the [brachytherapy] in terms of functional loss if we had a good [surgical] margin. So that's why I would have just used surgery alone and not had the risk of adding . . . either radiation or chemotherapy." That testimony, combined with Singer's testimony regarding the standard of care for surgical oncologists, provided a sufficient basis from which the jury could have concluded that, absent the defendant's negligence, the plaintiff's tumor would have been treated without brachytherapy.

The defendant claims that the jury could not rely on Singer's testimony because Singer conceded on cross-examination that it would not have been a violation of the standard of care to administer brachytherapy in December, 1992. We disagree. An admission that the use of brachytherapy at that time would not have violated the standard of care is not the same, in our view, as an affirmative opinion that such treatment *should* have been employed in order to satisfy the standard of

care. In light of Singer's testimony on direct examination, his acknowledgment on cross-examination that the use of brachytherapy would not violate the standard of care was not sufficient, in and of itself, to remove the question of causation from the jury. The jury was entitled to conclude that, although it would not have been negligent to employ brachytherapy in December, 1992, a surgical oncologist probably would have forgone such treatment in favor of surgery alone.

The plaintiff's appeal is dismissed; the judgment is affirmed on the defendant's cross appeal.

In this opinion the other justices concurred.