******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# SR HOLDINGS I, LLC *v.* JOSEPH CANNAVO ET AL.
## (AC 46673)
## (AC 46880)

Cradle, C. J., and Elgo and Suarez, Js.

### *Syllabus*

The plaintiff appealed from the trial court's judgment ordering the remittitur of the damages the jury had awarded to the plaintiff in connection with its claims of fraudulent transfer relating to certain real property that was formerly owned by the defendant W Co. and transferred to the defendant B Co. The plaintiff claimed that the court had abused its discretion in reducing the award. W Co., B Co. and their defendant managing members separately appealed from the trial court's judgment, following its denial of their motion to set aside the verdict in its entirety. The defendants claimed that the court abused its discretion because, inter alia, B Co. provided reasonably equivalent value to W Co. in exchange for the transferred real property. This court consolidated the appeals. *Held*:

This court dismissed the plaintiff's appeal for lack of subject matter jurisdiction, as the plaintiff accepted the remittitur and did not avail itself of the opportunity to decline the remittitur and pursue an appeal from the trial court's order pursuant to statute (§ 52-228a).

The trial court did not abuse its discretion in denying the defendants' motion to set aside the verdict, as the jury could have reasonably found from the evidence in the record that the value of the liens encumbering the transferred properties did not exceed the total value of the properties, that the transferred properties therefore were not overleveraged and, instead, constituted assets under the Connecticut Uniform Fraudulent Transfer Act (§ 52-552a et seq.), and that there was not reasonably equivalent value exchanged for the transferred properties because the total consideration furnished by B Co. was less than the market value of the properties.

Argued January 7—officially released June 9, 2026

### *Procedural History*

Action, in each case, to recover damages for, inter alia, fraudulent conveyance of real property, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, granted the motions for summary judgment filed by the defendant Provident Bank; thereafter, the court, *Genuario, J.*, consolidated the cases; subsequently, the cases were tried to the jury before *Hon. Kenneth B. Povodator*, judge trial referee; verdict for the plaintiff;

thereafter, the court, *Hon. Kenneth B. Povodator*, judge trial referee, denied the motion for judgment notwithstanding the verdict filed by the named defendant et al. and conditionally denied the motion to set aside the verdict filed by the named defendant et al. and the plaintiff appealed to this court; subsequently, the plaintiff accepted and consented to the decision of the court, *Hon. Kenneth B. Povodator*, judge trial referee, reducing the amount of the jury verdict award; thereafter, the court, *Hon. Kenneth B. Povodator*, judge trial referee, rendered judgment for the plaintiff, from which the named defendant et al. appealed and the plaintiff filed an amended appeal; subsequently, this court consolidated the appeals, and the named defendant et al. filed an amended appeal. *Appeals dismissed in AC 46673*; *affirmed in AC 46880*.

*Danielle J. B. Edwards*, for the appellant in Docket No. AC 46673 and the appellee in Docket No. AC 46880 (plaintiff).

*Andrew D. Brodnick*, with whom was *Jan A. Marcus*, for the appellees in Docket No. AC 46673 and the appellants in Docket No. AC 46880 (named defendant et al.).

*Opinion*

ELGO, J. In these consolidated appeals,[1] we address claims that arise from the trial court's resolution of the postverdict motion filed by the defendants Joseph Cannavo, Leonard Cannavo, Carmela Cannavo, Blue Mountain Partners, LLC (Blue Mountain Partners), and Western Greenwich Holdings, LLC (Western Greenwich Holdings)[2] in the two related civil actions underlying

---

[1] On January 19, 2024, by order of this court, the appeals filed in Docket Nos. AC 46673 and AC 46880 were consolidated.

[2] For clarity, we refer to Joseph Cannavo, Leonard Cannavo, and Carmela Cannavo individually by first name and collectively as the Cannavo siblings in this opinion. We refer to Joseph and Leonard collectively as the Cannavo brothers.

In addition, we note that Provident Bank, now known as Sterling National Bank (Provident Bank), was also named as a defendant in the underlying actions. On May 15, 2018, the trial court granted Provident Bank's motion for summary judgment in those actions and the propriety

these appeals.[3] In Docket No. AC 46673, the plaintiff, SR Holdings I, LLC, appeals from the judgment of the court ordering a remittitur, claiming that the court abused its discretion by reducing the award entered in accordance with the jury's verdict.[4] We dismiss the plaintiff's appeal for lack of subject matter jurisdiction. In Docket No. AC 46880, the defendants appeal from the judgment of the court denying their postverdict motion to set aside the verdict in its entirety. They claim that the court abused its discretion by denying their motion to set aside the verdict because **(1)** two parcels of real property that had been owned by Western Greenwich Holdings and transferred to Blue Mountain Partners[5] did not constitute assets under the Connecticut Uniform Fraudulent Transfer Act (CUFTA), General Statutes

thereof is not at issue on appeal. As such, we refer to the Cannavo siblings, Western Greenwich Holdings, and Blue Mountain Partners collectively as the defendants in these consolidated appeals.

[3] The first action was filed in the Superior Court in the judicial district of Stamford-Norwalk under Docket No. CV-16-6027598-S and the second action was filed in the Superior Court in the judicial district of Stamford-Norwalk under Docket No. CV-16-6027599-S. The trial court, sua sponte, consolidated the two actions on March 28, 2019.

[4] The plaintiff also challenges the court's determinations regarding the relief awarded to it pursuant to General Statutes § 52-552h. Specifically, the plaintiff argued that the court's "analysis of available remedies fell short" by "neglect[ing] to appropriately consider the full range of statutory remedies available" to the plaintiff and by declining to award monetary damages in addition to the liens the court attached on certain real property located in Greenwich. See footnote 5 of this opinion. Section 52-552h (a) provides in relevant part that a creditor "may obtain" various forms of relief, including "an attachment . . . against the asset transferred," which is the relief the court provided to the plaintiff in the present case. Furthermore, the parties submitted postverdict briefing to the court regarding their preference of remedies available pursuant to statute. The court, in its August 17, 2023 supplemental order, subsequently rendered judgment in favor of the plaintiff in accordance with § 52-552h (a). To the extent that the plaintiff's claim presents a separate and distinct issue from its challenge to the remittitur ordered by the court, we conclude that this claim is without merit. See part I of this opinion.

[5] Both parcels are located in Greenwich. They are known as 63–65 Pemberwick Road (Pemberwick Road property) and 15 South Water Street (South Water Street property). We refer to the parcels collectively as the Greenwich properties in this opinion.

§ 52-552a et seq., and **(2)** Blue Mountain Partners provided reasonably equivalent value in exchange for the transfers.[6] With respect to the defendants' appeal, we affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. At all relevant times, the Cannavo brothers were real estate investors that invested in primarily multifamily residential and mixed-use residential properties. To effectuate their overarching real estate investment business, the Cannavo brothers formed multiple entities, predominantly limited liability companies, which they used to obtain loans to purchase distressed properties.[7] The Cannavo brothers would subsequently repair these distressed properties, refinance them, and use the refinancing to purchase additional distressed properties.[8] They also leased and managed the properties they repaired.[9] By 2008, they owned and managed approximately seventy properties.

One of the Cannavo brothers' companies, Western Greenwich Holdings, purchased the Greenwich properties in 2001. On or about October 31, 2006, Western

[6]The defendants also claim that they are entitled to a directed verdict on essentially the same grounds. The defendants, however, failed to brief the relevant standard of review or provide any analysis related to their claim for a directed verdict in their consolidated principal or consolidated reply briefs to this court. Instead, the defendants' briefs solely discussed the propriety of the court's denial of their motion to set aside the verdict. See generally Practice Book § 67-4 (e). It is axiomatic that we "are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Mirlis* v. *Yeshiva of New Haven, Inc.*, 205 Conn. App. 206, 212 n.6, 257 A.3d 390, cert. denied, 338 Conn. 903, 258 A.3d 91 (2021). We therefore decline to review this claim because it is inadequately briefed.

[7]It is unclear from the record how many companies, whether limited liability companies or otherwise, the Cannavo brothers formed.

[8]As Joseph testified, the Cannavo brothers purchased their investment properties through "[b]uying, fixing, [and] refinanc[ing]."

[9]To this end, the Cannavo brothers also owned and operated a property management company.

Greenwich Holdings refinanced the Greenwich properties, procuring two loans from Washington Mutual Bank. One loan was evidenced by a note in the original principal amount of $1,320,000 and was secured by a mortgage on the Pemberwick Road property. The other loan was evidenced by a note in the original principal amount of $790,000 and was secured by a mortgage on the South Water Street property. After various transfers, ECP Port Chester, LLC (ECP), purchased a portfolio of loans, which contained the notes secured by the mortgages on the Greenwich properties, and those notes were subsequently assigned to ECP.[10]

In April 2007, Western Greenwich Holdings acquired two additional loans of $150,000 each from Branca Realty, LLC, one of which was secured by a mortgage on the Pemberwick Road property and one of which was secured by a mortgage on the South Water Street property (Branca mortgages). The Branca mortgages were subordinated to the other mortgages on the Greenwich properties.

On November 30, 2010, ECP sent two letters to Western Greenwich Holdings, which provided that the notes on both the Greenwich properties were in default and demanded the entire balances due. According to those letters, the total amount due on the note secured by the Pemberwick Road property was $1,386,570.80 and

---

[10]These Washington Mutual Bank notes were subsequently purchased by JP Morgan Chase Bank, N.A. (Chase). On November 10, 2010, ECP subsequently purchased a portfolio of loans from Chase, which included the notes secured by the mortgages on the Greenwich properties.

Michael House, a commercial real estate lender who worked for the entity that wholly owned ECP, testified that ECP purchased a "collection of loans" from Chase "in bulk. . . . [I]t was just a portfolio of loans . . . [f]or different properties secured by different real estate." House testified that the portfolio ECP purchased had approximately twenty loans, "[s]ome of them were in default, some of them were current . . . ." He testified that the portfolio consisted entirely of loans that were secured by mortgages against properties owned by the Cannavo brothers' various entities. He testified that the portfolio had a face value of approximately $20,000,000 and that ECP had purchased it for approximately $8,000,000 or $9,000,000.

the total amount due on the note secured by the South Water Street property was $830,252.09. Through a purchase agreement dated December 22, 2010 (purchase agreement), ECP agreed to sell the portfolio back to the Cannavo brothers, or one of their entities, provided the Cannavo brothers made a down payment and made additional monthly interest payments on the notes in the portfolio. Pursuant to that purchase agreement, the Cannavo brothers had until June 2011 to secure financing to purchase the portfolio, which included the notes secured by mortgages on the Greenwich properties.[11] Joseph testified that the purchase agreement was "an interest only payment [agreement] to hold the deal together while we looked for financing."

Joseph formed Blue Mountain Partners sometime in 2010 and apparently attempted to use it to secure the necessary financing to purchase the ECP portfolio but was unable to do so because of his poor credit rating. Joseph testified that, "by this time, we were falling behind on all of our mortgage payments, so the credit was bad." After unsuccessfully attempting to secure financing, Joseph transferred Blue Mountain Partners to his sister Carmela sometime in 2011. Carmela then became the sole member of Blue Mountain Partners. Leonard testified that Carmela "was always interested in real estate" and she had a high credit rating and assets, which would help secure the necessary financing to purchase the ECP portfolio. In exchange, Leonard testified that he would manage the properties Carmela purchased.

Leonard testified that he used Carmela's credit to negotiate a loan with Provident Bank. Regarding Provident Bank's loan, Grace Sabino's prior testimony was read

[11]Michael House testified that the purchase agreement was essentially a "settlement" wherein ECP agreed to "sell [the Cannavo brothers] their portfolio back . . . if they paid us off by a certain time. . . . [I]t was an agreement to allow them to pay off their debts at a discount through the acquisition of the loans." The agreement was between ECP, Blue Mountain Partners and Western Greenwich Holdings, among others, and was guaranteed by the Cannavo brothers. The agreement included an attached schedule, listing twenty-one notes.

into the record.[12] She testified that Leonard contacted her to "refinance" the existing debt on the Greenwich properties so that Carmela could purchase them through Blue Mountain Partners. Sabino testified that generally Provident Bank would loan up to 75 percent of the loan-to-value ratio for property refinancing and that the bank hired appraisers to value the Greenwich properties.[13] Provident Bank agreed to loan $1,745,000 to Blue Mountain Partners for the refinancing.[14]

As the Cannavo siblings attempted to secure financing for the Greenwich properties, Sovereign Bank commenced two foreclosure actions in a New York court against several defendants, including the Cannavo brothers and Western Greenwich Holdings.[15] Blue Mountain Partners was not named as a defendant in either of those New York foreclosure actions. Sovereign Bank assigned its full interest in the two New York foreclosure actions and its interest "in the underlying notes, mortgage, and related loan documents" to the plaintiff, and the plaintiff was thereafter substituted for Sovereign Bank in both

---

[12]Sabino was an employee of Provident Bank at all relevant times and negotiated the loan for Blue Mountain Partners with Leonard. It is unclear whether Sabino's prior testimony came from a previous trial or deposition. The transcript of her prior testimony was not in the record.

[13]R.P. Hubbell and Company, Inc., appraised the two Greenwich properties for Provident Bank, with an effective date of valuation for both on June 7, 2011. The Pemberwick Road property was valued at a market value of $1,470,000, based on an exposure time (i.e., the duration the property is on the market prior to sale) of approximately nine to twelve months, and a liquidation value of $1,170,000, based on an exposure time of approximately three months. The South Water Street property was valued at a market value of $1,020,000, based on an exposure time of approximately nine to twelve months, and a liquidation value of $820,000, based on an exposure time of approximately three months.

[14]$1,745,000 is approximately 70 percent of $2,490,000, which was the market value of both Greenwich properties according to the June 7, 2011 appraisals.

[15]These actions were filed in the New York Supreme Court in Westchester County under Index Nos. 20492-10 and 20493-10. Leonard testified that those foreclosure actions pertained to two mortgages spread across twenty properties, which were mainly multifamily residences. The record does not indicate the specific properties that were the subject of those foreclosure actions.

of the New York foreclosure actions. On November 14, 2011, a judgment of foreclosure by sale was rendered in both actions.

On January 24, 2012, ECP sent Western Greenwich Holdings a letter, which stated in relevant part: "In anticipation of the loan payoff this week, the current outstanding balance on the loans to Western Greenwich Holdings . . . which are secured by mortgages on the [Greenwich] properties, is $1,500,000." Provident Bank disbursed, inter alia, $1,500,000 of the loan to ECP and $150,000 of the loan to Branca Realty, LLC.[16] By an agreement dated January 24, 2012, ECP agreed, inter alia, to release certain mortgages securing loans that had been paid off, including the mortgages on the Greenwich properties.

On January 25, 2012, the Greenwich town clerk recorded the releases of the ECP mortgages, the Branca mortgages, and a cross-collateralization agreement secured by the Greenwich properties.[17] On the same day, the town clerk recorded Western Greenwich Holdings'

[16]Provident Bank disbursed the remaining $95,000 in varying sums to Provident Bank ($7663.21); Priolet & Associates, P.C. ($7500); Mayo Crowe, LLC ($2500); John M. Crane, P.C. ($1250); Receiver of Taxes ($27,541.79); DiFabio & Associates, as Attorney ($40,998); First American Title Insurance ($7118); and the Greenwich town clerk ($429).

Michael House testified that he could not recall exactly, but that ECP likely received the $1,500,000 and subsequently released the mortgages on the Greenwich properties, as "[t]hat would be the normal course of business . . . ." Joseph likewise testified that they, or an entity, paid ECP $1,500,000 for the Greenwich properties.

Although the amount of the Branca mortgages totaled $300,000, Gene Branca, the managing member of Branca Realty, LLC, testified that he was paid $150,000 on or about January 24, 2012, and that Branca Realty, LLC, released both mortgages in exchange for that payment. Specifically, Branca testified that the Cannavo brothers "wanted to pay $150,000 down at closing on one of the refinances that they were going to get . . . and the other $150,000 they asked to put [on] . . . a piece of real estate, as that was collateralized by that real estate that they owned." Branca testified that, although Branca Realty, LLC, released both mortgages against the Greenwich properties, it was still owed $150,000.

[17]The releases for the Branca mortgages were signed on January 18, 2012. The releases for the ECP mortgages were signed on January 24, 2012. The cross-collateralization agreement release, which

transfer of title to the Greenwich properties to Blue Mountain Partners, for the recited consideration of $10 each and conveyance taxes received.[18]

On April 3, 2012, the plaintiff filed a motion for a deficiency judgment in both New York foreclosure actions. On September 24, 2012, the New York court rendered a deficiency judgment against, among others, the Cannavo brothers and Western Greenwich Holdings, jointly and severally, for $2,836,459.42 in the first New York foreclosure action. On January 7, 2013, the New York court rendered a deficiency judgment against, among others, the Cannavo brothers and Western Greenwich Holdings, jointly and severally, for $1,618,929.82 in the second New York foreclosure action.

In January 2016, the plaintiff commenced the two underlying actions against the defendants.[19] The New York deficiency judgment of $2,836,459.42 in the action filed in the New York Supreme Court in Westchester County under Index No. 20492-10 formed the basis of the plaintiff's first action against the defendants in Connecticut, which was filed in the Superior Court in the judicial district of Stamford-Norwalk under Docket No. CV-16-6027598-S. The New York deficiency judgment of $1,618,929.82 in the action filed in the New York Supreme Court in Westchester County under Index No. 20493-10 formed the basis of the plaintiff's second

cross-collateralized the Greenwich properties and two other properties in Bridgeport, was signed on January 24, 2012.

[18]On January 22, 2012, Western Greenwich Holdings signed the transfer of the South Water Street property to Blue Mountain Partners. On January 24, 2012, Western Greenwich Holdings signed the transfer of the Pemberwick Road property to Blue Mountain Partners.

Carmela, presumably through Blue Mountain Partners, subsequently hired the Cannavo brothers' property management company to manage the Greenwich properties. Blue Mountain Partners, or at least Carmela through various entities, also appears to own additional properties, in addition to the Greenwich properties, which the Cannavo brothers manage pursuant to an unspecified property management contract.

[19]The plaintiff commenced the action filed under Docket No. CV-16-6027598-S on January 23, 2016. The plaintiff commenced the action filed under Docket No. CV-16-6027599-S on January 26, 2016.

action against the defendants in Connecticut, which was filed in the Superior Court in the judicial district of Stamford-Norwalk under Docket No. CV-16-6027599-S. On September 5, 2017, the plaintiff filed an amended complaint, the operative complaint, in both actions. In those complaints, the plaintiff alleged, inter alia, that the defendants transferred the Greenwich properties from Western Greenwich Holdings to Blue Mountain Partners in violation of CUFTA.[20] Specifically, the plaintiff alleged that the defendants transferred the Greenwich properties to Blue Mountain Partners "for less than fair consideration" and "for the purposes of avoiding payment" of the New York deficiency judgments, and that the conveyances rendered Western Greenwich Holdings insolvent. The plaintiff further alleged that no amount of either of the New York deficiency judgments had been paid.[21]

The trial court, sua sponte, consolidated these two cases on March 28, 2019, which proceeded to trial in January

[20]The plaintiff's fraudulent transfer and fraudulent conveyance claims are functionally identical and are pleaded in counts one and two of their operative complaints. In addition to compensation for the allegedly fraudulent transfers, the plaintiff requested attorney's fees pursuant to CUFTA in count three of both operative complaints. We note that the plaintiff did not request attorney's fees in its postverdict brief requesting remedies pursuant to the verdict. The court, similarly, did not discuss attorney's fees in its August 17, 2023 supplemental order regarding judgment. In this appeal, the plaintiff has not raised any claim related to that issue.

The plaintiff also requested a declaratory judgment against Provident Bank in count four of both operative complaints. The court granted Provident Bank's motion for summary judgment in both cases on May 15, 2018. See footnote 2 of this opinion.

The plaintiff also alleged in count five of both operative complaints that the corporate veil of both Western Greenwich Holdings and Blue Mountain Partners should be pierced. This allegation was apparently abandoned prior to or at trial, and the court charged the jury solely with determining the plaintiff's fraudulent conveyance claims. See footnote 21 of this opinion. In this appeal, the plaintiff has not raised any claim related to that issue.

[21]Although the two New York deficiency judgments formed the basis of these two underlying actions, the plaintiff did not request any relief pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq. As the court noted in its August

2023.[22] At trial, the jury heard testimony from the Cannavo siblings and certain witnesses, including Michael House and Gene Branca. The jury also heard the previous testimony of various individuals, including Sabino and Joseph, which was read into the record.[23] Additionally, the jury was presented with several exhibits, including the various mortgages, transfers, forbearance agreements, cross-collateralization agreements, and releases regarding the Greenwich properties.

The jury returned a verdict in favor of the plaintiff on January 24, 2023. In response to the jury interrogatories, the jury found that, at the time Western Greenwich Holdings transferred the Greenwich properties to Blue Mountain Partners, the plaintiff had a claim pending against Western Greenwich Holdings. The jury found that the transfers were made with the "actual intent to hinder, delay or defraud the plaintiff as a creditor of Western Greenwich [Holdings]." The jury further found that the combined value of the Greenwich properties

_____

17, 2023 supplemental judgment order, "the complaint[s] contain[ed] allegations seemingly invoking [the Uniform Enforcement of Foreign Judgments Act]. The case[s] [were] tried solely on the basis of claims of fraudulent conveyance . . . . The court was never asked to charge the jury in accordance with any aspect of [the Uniform Enforcement of Foreign Judgments Act] and the court was never asked to provide any relief under that [act]."

[22]The court referred to these cases as "[i]ll-fated," considering the delays and mistrials that subsequently occurred. As the court summarized, the cases initially went to trial in March 2019, which resulted in a mistrial due to the unanticipated length of time it took to present evidence and the subsequent unavailability of a six person jury. The parties picked a second jury in March 2020, and the "emerging COVID-19 pandemic prevented the trial from proceeding beyond the jury selection phase." The parties picked a third jury in March 2022, and the cases went to the jury. The court, however, did not accept the jury's verdict because it found a material error or flaw in their interrogatory responses. The court instructed the jury to resume its deliberations, which it did, and it returned a new set of interrogatory responses. The court accepted this verdict and, "[o]nly after the jury had been discharged did the court realize that there was a second . . . problem with the interrogatory responses. As a result, the court declared a mistrial." The parties then selected a fourth jury in January 2023.

[23]It is unclear whether this previous testimony came from a prior proceeding, a deposition, or some other proceeding.

totaled $2,490,000. The jury determined that the Greenwich properties constituted assets and that they had a combined value of $745,000 in excess of any valid liens on the Greenwich properties.[24] The jury found that Blue Mountain Partners furnished a total of $1,745,000 in consideration for the Greenwich properties, including cash paid and liabilities assumed. The jury then found that the difference between the combined value of the Greenwich properties and the consideration furnished by Blue Mountain Partners for the Greenwich properties was $745,000. Finally, the jury concluded that Western Greenwich Holdings did not receive reasonably equivalent value in exchange for the Greenwich properties and that Western Greenwich Holdings was insolvent or became insolvent as a result of the transfers. The court accepted the verdict on the same day.

On February 2, 2023, the defendants filed a combined motion requesting that the judgment be set aside and that a judgment notwithstanding the verdict be granted in their favor, pursuant to Practice Book §§ 16-35[25] and 16-37.[26] The plaintiff objected to the defendants' motion. On March 6, 2023, the court held a hearing on that motion.

By memorandum of decision dated June 20, 2023, the court conditionally denied the defendants' combined

---

[24]In other words, the jury returned a verdict of $745,000 for the plaintiff by finding that $745,000 worth of assets were transferred in violation of CUFTA.

[25]Practice Book § 16-35 provides in relevant part: "Motions . . . to set aside a verdict . . . must be filed with the clerk within ten days after the day the verdict is accepted; provided that for good cause the judicial authority may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

[26]Practice Book § 16-37 provides in relevant part: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment

motion to set aside the verdict and motion for judgment notwithstanding the verdict. In ruling on those motions, the court noted an inconsistency with the jury's findings regarding the two Branca mortgages. Specifically, the court found that there was "no reasonable basis for the jury to have omitted the second [$150,000] Branca [mortgage] in its determination of valid liens . . . ." The court thus issued "an order in the nature of remittitur" and reduced the jury finding of the net equity transferred, by the amount of the omitted Branca mortgage, to $595,000. The court conditioned this reduction on the plaintiff's acceptance and stated that, if the plaintiff declined, it would grant the defendants' motion to set aside the verdict.

On June 26, 2023, the plaintiff accepted the remittitur. Specifically, the plaintiff filed a pleading with the court, in which it averred in relevant part: "In accordance with the decision of [the court] . . . dated June 20, 2023, the plaintiff accepts and consents to the decision reducing the jury verdict award from $745,000 to $595,000."

On July 11, 2023, the plaintiff filed an appeal from the court's June 20, 2023 decision to conditionally deny the defendants' combined motion to set aside the verdict and motion for judgment notwithstanding the verdict. This appeal was filed under AC 46673.

On July 11, 2023, the trial court scheduled a status conference and requested supplemental briefing on the issue of the proper remedy to be awarded to the plaintiff

rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict . . . . If a verdict was returned, the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . ."

The defendants' counsel moved for a directed verdict at the close of the plaintiff's case-in-chief, arguing that the plaintiff "failed to fulfill its burden of proof in establishing a fraudulent conveyance." Specifically, the defendants' counsel argued that the plaintiff failed to meet its evidentiary burden of establishing that the two Greenwich properties were assets under CUFTA and that the plaintiff failed to establish that there was not reasonably equivalent value exchanged for the Greenwich properties. The court denied the defendants' motion.

in light of the jury's verdict and the plaintiff's decision to accept the remittitur. The plaintiff filed its brief regarding remedies on August 8, 2023, and the defendants filed their brief regarding remedies on August 15, 2023. The court then issued a supplemental order dated August 17, 2023, in which it ordered the attachment of liens on the two Greenwich properties, totaling the reduced verdict award of $595,000.[27] The court ordered the attachment of a lien on the South Water Street property in the amount of $240,000 and a lien on the Pemberwick Road property in the amount of $355,000.[28] The court declined to award any additional legal or equitable relief to the plaintiff. The court subsequently rendered judgment in favor of the plaintiff based on that supplemental order.

On August 31, 2023, the defendants filed an appeal of the August 17, 2023 supplemental order and judgment with this court. This appeal was filed under AC 46880.[29] On September 6, 2023, the plaintiff amended its appeal filed under AC 46673 and indicated that the subject of that appeal was the August 17, 2023 supplemental order and judgment.[30]

[27]Specifically, the court cited General Statutes § 52-552h (a), which provides in relevant part: "In an action for relief against a transfer or obligation under [CUFTA], a creditor . . . may obtain . . . (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by [General Statutes § 52-278a et seq.] . . . ."

[28]The court stated: "There was general agreement that the Pemberwick Road property was worth more than the South Water Street property, and by at least two measures of record . . . the Pemberwick Road property was worth approximately 50 percent more than the [South] Water Street property. Allocating a rounded 60 percent of the $595,000 to the Pemberwick [Road] property, and a rounded 40 percent to the South Water Street property, the court enters an order that an attachment in the amount of $355,000 be placed on the [Pemberwick Road property] and further orders that an attachment in the amount of $240,000 be placed on the [South Water Street property]."

[29]The defendants filed an amended appeal on January 29, 2024, in response to the order by this court consolidating the two appeals filed under AC 46880 and AC 46673.

[30]On February 5, 2025, this court, sua sponte, ordered the parties to address, inter alia, whether this court lacks jurisdiction over the plaintiff's original appeal, filed under AC 46673 on July 11, 2023, because of

As a result of that amendment, both of the plaintiff's appeals, as well as the defendants' appeal, challenge the propriety of the court's August 17, 2023 supplemental order and judgment.

a lack of a final judgment. Practice Book § 17-2 provides in relevant part: "If no motions under Section 16-35 or 17-2A are filed, upon the expiration of the time provided for the filing of such motions, judgment on the verdict shall be rendered in accordance with the verdict, and the date of the judgment shall be the date the verdict was accepted. If motions are filed pursuant to Section 16-35 or 17-2A, judgment shall be rendered at the time of and in accordance with the decision on such motions. . . ." "It is well settled that the acceptance of the jury verdict at the time it is [returned] is deemed to constitute a final judgment . . . unless a motion to set aside is later filed." (Internal quotation marks omitted.) *Georges* v. *OB-GYN Services, P.C.*, 335 Conn. 669, 678, 240 A.3d 249 (2020); see also *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 73–74, 214 A.3d 345 (2019) ("Thus, the trial court's ruling on that postverdict motion becomes the controlling disposition for purposes of appeal. The appeal itself is taken from the judgment rendered by the trial court after it denied the motion for judgment notwithstanding the verdict and disposed of any other pending motions that may require a ruling before the judgment becomes final." (Footnote omitted.)); *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 84–86, 495 A.2d 1063 (1985) (dismissing appeal when trial court order failed to fully dispose claims for, inter alia, damages). The plaintiff appealed before the court fully resolved the claims for damages and prior to rendering judgment in its favor. We thus conclude that the plaintiff's original appeal was not properly before this court and dismiss it accordingly.

Although we dismiss the plaintiff's original appeal, the plaintiff's amended appeal, filed on September 6, 2023, was taken from the court's August 17, 2023 supplemental order regarding judgment, and it remains pending. Practice Book § 61-9 provides in relevant part: "If the original appeal is dismissed for lack of jurisdiction, any amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed." See *Stevens* v. *Khalily*, 220 Conn. App. 634, 641 n.9, 298 A.3d 1254 ("Although the plaintiff's original appeal was jurisdictionally defective for a lack of a final judgment, [the plaintiff] properly filed an amended appeal under Practice Book § 61-9 from a judgment from which an original appeal could have been filed. Accordingly, we dismiss the original appeal for a lack of subject matter jurisdiction. The amended appeal is properly before this court."), cert. denied, 348 Conn. 915, 303 A.3d 260 (2023). Notwithstanding the jurisdictional defect in the plaintiff's original appeal, the plaintiff's amended appeal is properly before this court and encompasses all of its claims on appeal. See, e.g., *Featherston* v. *Katchko & Son Construction Services, Inc.*, 201 Conn. App. 774, 780–83, 244 A.3d 621 (2020), cert. denied, 336 Conn. 923, 246 A.3d 492 (2021);

Before considering the specific claims raised in those appeals, we note as a preliminary matter that the policy underlying CUFTA is to "[protect] unsecured creditors from debtors who place assets beyond the reach of their unsecured creditors . . . ." (Footnote omitted.) *Geriatrics, Inc.* v. *McGee*, 332 Conn. 1, 15, 208 A.3d 1197 (2019). CUFTA was "enacted for the suppression of fraud, the advancement of justice and the promotion of the public good, it should be liberally and beneficially construed to suppress the fraud, abridge the mischief and enlarge the remedy. . . . [T]he common law . . . supplements the statute to the end that justice may be done." (Internal quotation marks omitted.) Id., 15–16.

General Statutes § 52-552e (a) sets forth the following test to determine whether a transfer is fraudulent: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."[31] As this court has observed,

*Rosa* v. *Lawrence & Memorial Hospital*, 145 Conn. App. 275, 282 n.9, 74 A.3d 534 (2013).

[31]General Statutes § 52-552e (b) provides: "In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation

"[t]he question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier." *Davenport* v. *Quinn*, 53 Conn. App. 282, 303, 730 A.2d 1184 (1999).

I

We must first determine whether we have subject matter jurisdiction over the plaintiff's amended appeal, in which it challenges the propriety of the remittitur it accepted. We conclude the plaintiff's acceptance of remittitur deprived this court of subject matter jurisdiction and, accordingly, dismiss its amended appeal.

In its June 20, 2023 memorandum of decision, the court conditionally denied the defendants' combined motion to set aside the verdict and motion for judgment notwithstanding the verdict. The court found that there was "no reasonable basis for the jury to have omitted the second Branca [mortgage] in its determination of valid liens . . . . [T]he court believes its only recourse is to enter an order in the nature of a remittitur, allowing the plaintiff to accept an equity determination in a reduced amount, reflective of the validity of the second Branca [mortgage] that was transferred to another property." Accordingly, the court ordered: "[T]he [defendants'] motion for judgment notwithstanding the verdict is denied; the motion to set aside the verdict is denied, subject to the agreement of the plaintiff that the net equity available in the [Greenwich] properties at the time of the transfers was $150,000 less than as stated in the jury interrogatories, for an 'adjusted' net equity of $595,000 (effectively modifying the responses to the jury interrogatories [numbers 4 and 6] to reflect a correction of the excessive as a matter of law figure returned by the jury); if not accepted, the motion to set aside the verdict is granted. If the plaintiff agrees to this adjustment, a

incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

pleading reflecting such consent must be filed no later than 20 days from the issuance of this decision." On June 26, 2023, the plaintiff filed its formal acceptance of remittitur, providing in relevant part: "In accordance with the decision of [the court] . . . dated June 20, 2023, the plaintiff accepts and consents to the decision reducing the jury verdict award from $745,000 to $595,000."

Following the commencement of these appeals, this court, sua sponte, issued an order permitting the parties to brief whether the plaintiff may properly argue, in the amended appeal, that the trial court erred in reducing the jury finding of the net equity in the Greenwich properties, considering it filed a notice of acceptance of that decision, citing *Cohen* v. *Yale-New Haven Hospital*, 260 Conn. 747, 800 A.2d 499 (2002), and *Civiello* v. *Owens-Corning Fiberglass Corp.*, 208 Conn. 82, 544 A.2d 158 (1988).[32] The plaintiff thereafter filed a brief with this court, in which it maintained that its "full amended appeal" was properly before this court.

We begin with our standard of review. "The issue of whether the plaintiff may appeal from the judgment rendered after his acceptance of a remittitur implicates the subject matter jurisdiction of this court, and therefore presents an issue of law. Accordingly, our review is plenary." *Cohen* v. *Yale-New Haven Hospital*, supra, 260 Conn. 754. A plaintiff, by accepting remittitur, is barred from appealing the propriety of that accepted remittitur. See id., 760 ("[T]o challenge the decisions of the trial court on appeal, the plaintiff was required to decline the remittitur and appeal from the trial court's order granting a new trial. The plaintiff, having failed to do so, his appeal is therefore dismissed."); E. Prescott, Connecticut Appellate Practice & Procedure (6th Ed. 2019) § 3-1:11.2, p. 154 ("If a court has ordered a remittitur . . . a plaintiff may either accept or reject the remittitur. If he accepts it, he cannot thereafter appeal from the judgment ordering the remittitur, even if he accepted the remittitur under protest.").

[32]The defendants were afforded the opportunity but declined to brief this issue and did not argue for the dismissal of the plaintiff's appeal.

The plaintiff argues that it is not barred from challenging the remittitur even though it accepted it because the remittitur was not ordered pursuant to the remittitur statutes, General Statutes §§ 52-216a[33] and 52-228b.[34] Relying on *Civiello* v. *Owens-Corning Fiberglass Corp.*, supra, 208 Conn. 89, the plaintiff argues that, because the defendants did not file a motion requesting remittitur and because the trial court did not hold a hearing on that motion, this court has subject matter jurisdiction to review the court's remittitur order, despite the plaintiff's acceptance.

We are not persuaded by the plaintiff's argument that the remittitur was not ordered pursuant to the remittitur statutes. Although the court did not cite the remittitur statutes in its August 17, 2023 supplemental order, the court referred to its order as one "in the nature of a remittitur . . . ." The court characterized the order as an adjustment to the jury verdict, and it found the verdict to be "excessive as a matter of law," which mirrors the language of § 52-216a. Moreover, the form of the order satisfied the requirements in § 52-228b, notably that, upon the court's conclusion that the verdict was excessive as a matter of law, the "prevailing party" must be given the "opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive." Likewise, the court's order satisfied the requirement that, "upon failure of the party so ordered to remit the amount ordered by the court, [the court] shall

---

[33]General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

[34]General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. . . ."

set aside the verdict and order a new trial."[35] General Statutes § 52-216a. We also note that the court followed the precedent of our Supreme Court requiring it to "set forth in the memorandum of decision clear, definite and satisfactory reasons for" ordering remittitur.[36] *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 283, 32 A.3d 318 (2011).

Furthermore, the plaintiff's reliance on *Civiello* for the proposition that this court has jurisdiction over an appeal taken from an accepted remittitur order is misplaced. The plaintiffs in *Civiello* did not appeal the propriety of a remittitur order after accepting it. Rather, those plaintiffs appealed a separate determination by the court declining to award interest on the judgment pursuant to General Statutes (Rev. to 1987) § 52-192a.[37] *Civiello*

[35]To the plaintiff's credit, at least in theory, "[o]ther deductions or additions to a verdict, not in the nature of a remittitur/additur, are final and appealable, because the prevailing party does not have an alternative of a new trial if he fails to accept the order." E. Prescott, supra, § 3-1:11.2, p. 155. In the present case, the court granted the prevailing party, the plaintiff, an option to either accept remittitur or to decline it and opt for a new trial.

[36]As we conclude we lack subject matter jurisdiction to review the propriety of the remittitur ordered by the court, we make no determination as to whether the reasons the court set forth in its memorandum of decision were satisfactory; we merely note that the court did set forth those reasons as required by *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 283, 32 A.3d 318 (2011).

[37]General Statutes (Rev. to 1987) § 52-192a (b) provides: "After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This

v. *Owens-Corning Fiberglass Corp.*, supra, 208 Conn. 87–88. In *Cohen* v. *Yale-New Haven Hospital*, supra, 260 Conn. 747, our Supreme Court clarified its holding in *Civiello*, stating: "[T]he refusal to award interest was a separate determination from the judgment rendered upon the plaintiff's acceptance to the remittitur. . . . This court's conclusion in *Civiello* was in accordance with well established authority holding that the *Donovan* [v. *Penn Shipping Co.*, 429 U.S. 648, 649, 97 S. Ct. 835, 51 L. Ed. 2d 112 (1977)][38] rule does not prevent the appeal of issues that are separate or distinct from the issue on which a plaintiff has accepted a remittitur." (Citation omitted; footnote added.) *Cohen* v. *Yale-New Haven Hospital*, supra, 756; see also *Semrau* v. *Herrick*, 72 Conn. App. 327, 332 n.5, 805 A.2d 125 (2002).

The analysis in *Cohen* informs our resolution of the plaintiff's claim. In *Cohen*, the trial court, upon the defendant's motion for remittitur, determined that the jury's damages award of certain noneconomic damages was excessive and ordered the plaintiff either to accept remittitur or to submit to a new trial with respect to damages. *Cohen* v. *Yale-New Haven Hospital*, supra, 260 Conn. 750. The plaintiff accepted remittitur, and judgment was rendered in accordance with the remittitur. Id. The plaintiff appealed, seeking to both retain the favorable judgment and "attempting to procure additional damages pursuant to a new trial on the issue" of those certain noneconomic damages. Id., 755. Our Supreme Court determined that "the issue before us therefore turns on whether the issues that the plaintiff seeks to raise on appeal are separate and distinct from the issue upon which he accepted the remittitur." Id., 757.

section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

[38]In *Donovan*, the United States Supreme Court reaffirmed its longstanding rule that "a plaintiff cannot 'protest' a remittitur he has accepted in an attempt to open it to challenge on appeal. A line of decisions stretching back to 1889 has firmly established that a plaintiff cannot appeal the propriety of a remittitur order to which he has agreed." *Donovan* v. *Penn Shipping Co.*, supra, 429 U.S. 649.

It concluded that the issues of the varying noneconomic and economic damages were not separate and distinct. Id., 757–58. It further concluded that, "to challenge the decisions of the trial court on appeal, the plaintiff was required to decline the remittitur and appeal from the trial court's order granting a new trial. The plaintiff having failed to do so, his appeal is therefore dismissed." Id., 760; see also E. Prescott, supra, §3-1:11.2, p. 154 ("If a court has ordered a remittitur . . . a plaintiff may either accept or reject the remittitur. If he accepts it, he cannot thereafter appeal from the judgment ordering the remittitur, even if he accepted the remittitur under protest.").

We note that, when faced with remittitur, a plaintiff is not without recourse from this court, as it can decline the remittitur and appeal pursuant to General Statutes §52-228a.[39] See, e.g., *Cohen* v. *Yale-New Haven Hospital*, supra, 260 Conn. 760; *Johnson* v. *Chaves*, 78 Conn. App. 342, 345, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). In the present case, the plaintiff did not avail itself of the option to decline the remittitur and pursue an appeal in accordance with §52-228a. Rather, the plaintiff elected to accept the remittitur contained in the court's June 20, 2023 memorandum

---

[39]General Statutes §52-228a provides in relevant part: "In any jury case where the court orders a decrease in the amount of the judgment . . . the party aggrieved by the order of remittitur . . . may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided."

The statutory relief that was available to the plaintiff renders its appeal to public policy unpersuasive. The plaintiff argues that, if we conclude that we lack subject matter jurisdiction over this appeal, it "would encourage trial courts to wrongly relabel judicial reductions of jury damages as 'adjustments' instead of 'remittiturs' to avoid the legislated requirements of §52-228b." We are unpersuaded that the nomenclature a trial court may use could somehow confer on this court subject matter jurisdiction where we have none. See, e.g., *Benvenuto* v. *Brookman*, 348 Conn. 609, 616–17, 309 A.3d 292 (2024). We further note that, at least in theory, if a trial court issued such an order, without the option for the prevailing party to decline a remittitur and proceed to a new trial, that order would likely be appealable. See footnote 35 of this opinion.

of decision. In light of the foregoing, we conclude that the plaintiff's decision to accept the remittitur deprives this court of subject matter jurisdiction over the issues raised in its amended appeal.[40] We therefore dismiss the plaintiff's amended appeal. See *Cohen* v. *Yale-New Haven Hospital*, supra, 754, 760.

II

In AC 46880, the defendants claim that the court abused its discretion in denying their postverdict motion to set aside the verdict. They assert that the jury's verdict should have been set aside in its entirety because it is "completely belied by the evidence . . . ." Specifically, the defendants argue that **(1)** the Greenwich properties could not be considered assets under CUFTA because they were overleveraged and **(2)** Blue Mountain Partners provided reasonably equivalent value for the transfers of the Greenwich properties.[41] We are unpersuaded.

We begin by noting that "[t]he proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the

---

[40]To the extent that the plaintiff has attempted to raise a claim related to notice or due process regarding the failure of the court to order a hearing on the remittitur, it has failed to do so as a distinct claim, either in its briefs or at oral argument before this court. See, e.g., *Mirlis* v. *Yeshiva of New Haven, Inc.*, 205 Conn. App. 206, 212 n.6, 257 A.3d 390, cert. denied, 338 Conn. 903, 258 A.3d 91 (2021).

[41]The defendants also argue that Western Greenwich Holdings was not rendered insolvent by the transfer of the Greenwich properties to Blue Mountain Partners. Our review of the record, however, reveals that the defendants did not raise this argument before the trial court, either in their motion to set aside the verdict or during oral arguments on that motion. We therefore decline to review this argument on appeal. See *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 335–36, 838 A.2d 135 (2004) (declining to review claim that was neither raised in motion to set aside verdict nor at oral argument).

trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Gibson* v. *Denmo's Original Drive-In, LLC*, 232 Conn. App. 733, 748, 338 A.3d 404 (2025). We are further mindful that we "do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and facts." (Internal quotation marks omitted.) *National Waste Associates, LLC* v. *Scharf*, 183 Conn. App. 734, 744, 194 A.3d 1 (2018).

A

The defendants first argue that the court abused its discretion by declining to set aside the verdict because the Greenwich properties did not constitute assets under CUFTA. Specifically, the defendants argue that (1) the Greenwich properties were overleveraged and therefore could not be considered assets under CUFTA and (2) the principal amounts due under the mortgages on the Greenwich properties were not reduced prior to the transfers and, thus, the total amount of valid liens on the properties exceeded their value. We disagree.

CUFTA defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." General Statutes § 52-552b (12). An asset is, inter alia, the "property of a debtor, but the term does not include . . . (A) Property to the extent it is encumbered by a valid lien . . . ." General Statutes § 52-552b (2). Property is "anything that may be the subject of ownership." General Statutes § 52-552b (10). A lien is "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common law

lien or a statutory lien." General Statutes § 52-552b (8). A valid lien is "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." General Statutes § 552b (13). "Thus, a transfer cannot be considered fraudulent if, at the time of the transfer, the transferred property is encumbered by valid liens exceeding the property's value because the property would no longer be considered an asset under § 52-552b (2), and only assets may be transferred fraudulently." *Smith* v. *Marshview Fitness, LLC*, 191 Conn. App. 1, 10, 212 A.3d 767 (2019).

In the present case, the jury found that the Greenwich properties collectively had a total value of $2,490,000. The jury also found that the Greenwich properties collectively had "a combined value in excess of the total of the valid liens on the properties" of $745,000. In other words, the jury found that the amount of valid liens on the Greenwich properties totaled $1,745,000.[42]

The court conditionally denied the defendants' motion to set aside the verdict; see part I of this opinion; and it explicitly stated that "the defendants are not disputing the existence of evidence from which the jury could have found the existence of valid liens of at least [$1,895,000] . . . . Rather, the defendants are arguing that the jury was required to find an aggregate of valid liens that substantially/materially exceeded that amount, and could

[42]The court, sua sponte, ordered remittitur, finding that the jury could not reasonably have discredited the two uncontroverted Branca mortgages, which were secured by the Greenwich properties, as valid liens on the properties at the moment of transfer. The court's order, therefore, modified the jury's finding of the total equity in the Greenwich properties, less valid liens, to $595,000. Similarly, the court's order modified the jury's implicit finding that the total amount of valid liens on the Greenwich properties totaled $1,895,000. Thus, the modified $595,000 equity finding is the modified verdict award, as that is the value of the assets the jury found the defendants transferred in violation of CUFTA.

Although the plaintiff challenged the propriety of this order, as previously mentioned in this opinion, we concluded that we lack subject matter jurisdiction over the plaintiff's amended appeal because the plaintiff had accepted the remittitur. See part I of this opinion.

not, as a matter of law, have found the aggregate liens to be 'only' that amount." The court further noted that the evidence indicated "a lack of accurate accounting of the loan balances for the two Greenwich properties in question" and notably a lack of specificity "as to the actual principal and interest due, as of the time of the transaction in question, as to each of the properties." The court further noted that the defendants "do not address (adequately, if at all) the significance of 'valid' as a modifier. They do not address why the jury could not have applied a commonsense meaning to the term, and necessarily have not addressed why the jury could not have determined that the $1,500,000 combined loan balance, plus the disbursements made at closing and as reflected on the disbursement sheet . . . represented the sum total of all 'valid' liens." The court therefore conditionally denied the defendants' motion to set aside the verdict.

The defendants contend that the jury's calculation was improper and they are thus entitled to have the verdict set aside. The defendants argue that the Greenwich properties were encumbered, collectively, by at least $2,516,822 of valid liens, which exceeded the jury finding of $2,490,000 in total value of the Greenwich properties. Specifically, the defendants contend that the Greenwich properties were encumbered by valid liens, including the mortgage on the Pemberwick Road property securing the $1,320,000 note, the mortgage on the South Water Street property securing the $790,000 note, the $150,000 mortgage on the Pemberwick Road property, and the second $150,000 mortgage on the South Water Street property.[43] The defendants further argue that the

---

[43]The principal amounts of the four notes and mortgages referenced by the defendants total $2,410,000. Presumably, the defendants refer to ECP's default letters sent to Western Greenwich Holdings, dated November 30, 2010, which stated that the total amount due on the note secured by the South Water Street property was $830,252.09 and the total amount due on the note secured by the Pemberwick Road property was $1,386,570.80. The total amount due pursuant to ECP's November 10, 2010 letters, in addition to the principal amounts of the two $150,000 Branca mortgages, equals $2,516,822.89. The defendants, however, do

jury disregarded the cross-collateralization agreement, which would have increased the total encumbrances on the Greenwich properties by a prorated amount of $375,000.[44] Thus, the defendants argue that the jury failed to correctly calculate the amount of the valid liens, and, as such, the verdict should be set aside.

Our review of the record reveals that the jury had before it evidence from which it reasonably could have found that the amount of the valid liens totaled $1,895,000. Notably, the record included ECP's January 24, 2012 letter to Western Greenwich Holdings, which provides in relevant part: "In anticipation of the loan payoff this week, the current outstanding balance on the loans to Western Greenwich Holdings . . . which are secured by mortgages on the [Greenwich] properties, is $1,500,000." Nothing in that letter suggests that the $1,500,000 was a reduced amount or part of a conditional agreement.[45]

not address why the jury was required to credit ECP's November 30, 2010 letters as the correct amount of the balance due on the notes in ECP's portfolio, especially in light of ECP's January 24, 2012 letter, which stated that the "current outstanding balance" due on the notes secured by mortgages on the Greenwich properties totaled $1,500,000.

[44]The court specifically determined that the jury was entitled to reject the cross-collateralization agreement as a valid lien on the Greenwich properties in the present case, stating, "the court itself questioned the ability to use liabilities spread across multiple properties as if the aggregate liability was a liability on each property, for the purposes of a situation such as this." The court determined that "the jury reasonably could have rejected the lien as 'valid' at the level of the individual entities."

The record reveals that ECP released the Greenwich properties from the cross-collateralization agreement after receiving the $1,500,000 disbursement. Furthermore, the plain language of ECP's January 24, 2012 letter stated that the "current outstanding balance on the loans" secured by the mortgages on the Greenwich properties totaled $1,500,000. It is plausible that the jury credited the January 24, 2012 letter as accounting for the entire amount due to ECP, specifically any amounts due under both of the mortgages and the cross-collateralization agreement. We therefore conclude that the court did not abuse its discretion in declining to set aside the verdict on the basis of the cross-collateralization agreement.

[45]The record includes evidence of a series of conditional agreements between ECP and the defendants, among others, which referenced the entire portfolio of loans ECP purchased from JP Morgan Chase Bank,

Furthermore, the record included Provident Bank's loan disbursement sheet, evidence of the Branca mortgages, testimony, and the various releases of the mortgages and cross-collateralization agreements on the Greenwich properties. In sum, there existed evidence in the record for the jury to reasonably conclude, as it did, that the sum total of the valid liens on the Greenwich properties equaled $1,895,000.

The defendants rely on *Smith* v. *Marshview Fitness, LLC*, supra, 191 Conn. App. 1, for the proposition that the notes were not reduced as a matter of law prior to the transfer of the Greenwich properties and, therefore, a reduced amount of the liens could not be used to calculate the total amount of valid liens on the Greenwich properties.[46] The defendants argue that the January 24, 2012 letter recorded a reduced amount of the valid liens, and the jury was required to credit the November 30, 2010 default letters that ECP sent to Western Greenwich Holdings.[47] Thus, the defendants argue the Greenwich properties could not be considered assets under CUFTA.

N.A. Those agreements each permitted, inter alia, the defendants to purchase the portfolio for a discounted price. The existence of these conditional agreements, however, does not undermine the jury's findings, as the agreements themselves do little to clarify the total amount of valid liens on the Greenwich properties, much less at the time of transfer. Furthermore, it is not clear that these agreements represent a conditionally discounted mortgage on the individual Greenwich properties, especially in light of the plain language of ECP's January 24, 2012 letter, which stated in relevant part that the "current outstanding balance on the loans" secured by the mortgages on the Greenwich properties totaled $1,500,000. As such, we are not persuaded that the court abused its discretion in denying the defendants' motion to set aside the verdict.

[46] Presumably, the defendants' argument again relates to their interpretation of the evidence, which is that the Greenwich properties were encumbered by valid liens totaling $2,516,822.89, not $1,895,000. The defendants, however, do not address why the jury was required to view the evidence in their favor, considering the conflicting evidence of the amount of valid liens on the Greenwich properties. See footnote 43 of this opinion.

[47] See footnote 43 of this opinion.

The defendants, however, overstate the holding in *Smith*. The trial court in *Smith* determined that there was no dispute that the property in question was encumbered by a valid lien in excess of its value. Id., 11. Although the lender in *Smith* agreed to release its lien on the property in exchange for, inter alia, $100,000; id., 6; the court denied the plaintiff's argument that there existed a disputed fact as to the value of the valid lien pursuant to the lender's agreement to receive less than the value of the lien for its release. Id., 11.

The defendants' reliance on *Smith* is thus misplaced because, in the present case, there existed a dispute as to the sum total of valid liens on the Greenwich properties. The jury was presented with evidence of, inter alia, three letters from ECP to Western Greenwich Holdings regarding the total amount due on the loans. The letters that the defendants argue should have been credited were sent approximately two years before the transfer. One letter, the January 24, 2012 letter, was sent immediately prior to the transfer. The jury was entitled to credit whichever letter it deemed credible, and it presumably credited the plain language of the January 24, 2012 letter, which provided in relevant part that the "current outstanding balance" on the notes secured by mortgages on the Greenwich properties totaled $1,500,000. Nowhere in that letter does it suggest that the $1,500,000 is a reduced or discounted amount owed to ECP on the notes as secured by the mortgages on the Greenwich properties. The jury, in turn, could have reasonably added the disbursements recorded on Provident Bank's disbursement sheet with the two Branca mortgages and found that the valid liens on the Greenwich properties totaled $1,895,000. We therefore conclude that the court did not abuse its discretion when denying the defendants' motion to set aside the verdict.[48]

[48]The defendants have consistently maintained that the transfer of the Greenwich properties constituted a short sale. In a short sale, "the bank releases its mortgage, receives only the proceeds of the sale, and often forgoes pursuing the borrower for the deficiency on the note. Before agreeing to cut their losses in this way, banks often insist on

B

The defendants next argue that the court abused its discretion by declining to set aside the jury verdict because Blue Mountain Partners provided reasonably equivalent value in exchange for the transfers. Specifically, the defendants argue that **(1)** Carmela satisfied existing debt on the Greenwich properties, which constituted reasonable value and **(2)** reasonably equivalent value was paid for the transfers when comparing the value paid with the distressed value of the Greenwich properties. We disagree.

In the present case, the jury found that the "[t]otal consideration furnished by Blue Mountain [Partners]" to Western Greenwich Holdings for the transfers, inclusive of "cash paid, liabilities of Western Greenwich [Holdings] that were assumed, [and] liabilities of Western Greenwich [Holdings] that were paid," totaled $1,745,000. The court, although it never explicitly ruled on the defendants' argument that the jury's finding of the total consideration furnished was unreasonable, implicitly found that the jury could have reasonably reached the verdict that it did when it denied the defendants' motion to set aside the verdict.[49]

Similar to our resolution of the defendants' arguments in part II A of this opinion, the defendants' contention

certain conditions. Those conditions include, among other things, that the sale be at arm's length (that is, between strangers), with the selling homeowner surrendering residency. If the conditions are not met, a bank can refuse to approve the short sale and might well opt to see if the borrower's desire to avoid foreclosure and stay in the home causes the borrower to continue making payments." *United States* v. *Jiménez*, 946 F.3d 8, 11 (1st Cir. 2019). In the present case, there existed no evidence in the record to suggest that ECP agreed to a short sale or ever referred to the various purchase agreements or forbearance agreements as such. Furthermore, the membership of Western Greenwich Holdings and Blue Mountain Partners is comprised solely of the Cannavo siblings, either wholly or in part. Moreover, the jury, in returning a plaintiff's verdict, clearly disagreed with the defendants' argument that the transfer of the Greenwich properties constituted a short sale.

[49] Although the trial court did not explicitly rule on the defendants' argument that the jury's finding of the total consideration furnished

is, in essence, an argument that the jury should have viewed the record in a light more favorable to them. Specifically, the defendants argue that Carmela, through Blue Mountain Partners, secured the total debt owned by ECP in its portfolio and that such securitization and eventual forgiveness of that debt constituted reasonably equivalent value for the Greenwich properties. The defendants also contend that the Greenwich properties should have been valued at $1,990,000 and that the jury finding of $1,745,000 total consideration paid is a reasonably equivalent value to the distressed values of the Greenwich properties.

The jury's findings, however, are supported by the record. The record includes evidence, such as ECP's January 24, 2012 letter, which provided that the "current outstanding balance on the loans" secured by mortgages on the Greenwich properties totaled $1,500,000. Furthermore, the evidence includes the appraisals dated June 7, 2011, which listed both the distressed value ($1,990,000) and the market value ($2,490,000) of the Greenwich properties. The defendants have not addressed why it would be unreasonable for the jury to credit the market value of the Greenwich properties.[50] The record also includes Provident Bank's disbursement sheet, relevant testimony, and the various releases of the liens on the Greenwich properties. On the basis of the evidence presented at trial, the jury reasonably could have found

was unreasonable, our review of the court's memorandum of decision and its denial of the defendants' motion to set aside the verdict accordingly convinces us that the court implicitly rejected the defendants' argument. See, e.g., *Pryor* v. *Brignole*, 231 Conn. App. 659, 695, 333 A.3d 1112 (2025) (concluding, on basis of trial court's memorandum of decision and record, that trial court had implicitly granted defendants' motions). Moreover, the defendants did not seek an articulation of the court's denial of their motion to set aside the verdict. See Practice Book § 66-5; *Doe* v. *Bemer*, 215 Conn. App. 504, 517 and n.7, 283 A.3d 1074 (2022).

[50]Presumably, the defendants' argument that the jury erred in calculating the value of the Greenwich properties is premised on their previous argument, that the properties were distressed due to the total amount of valid liens that the defendants contend were on the properties. See part II A of this opinion.

that the total consideration furnished by Blue Mountain Partners for the Greenwich properties equaled the $1,745,000 listed in Provident Bank's disbursement sheet. The jury also could have reasonably credited the market value of the Greenwich properties, which is consistent with the jury finding that the value of the Greenwich properties totaled $2,490,000. The jury, likewise, could have reasonably calculated that the difference between the market value of the Greenwich properties and the total consideration furnished was $745,000 and thus found that there was not reasonably equivalent value exchanged.[51] We reiterate that we do not presume error on the part of the trial court; *National Waste Associates, LLC* v. *Scharf*, supra, 183 Conn. App. 744; and apply a deferential standard of review for reviewing the denial of a motion to set aside the verdict. *Gibson* v. *Denmo's Original Drive-In, LLC*, supra, 232 Conn. App. 748. We thus conclude that the court did not abuse its discretion when it denied the defendants' motion to set aside the verdict.

The plaintiff's original and amended appeals in AC 46673 are dismissed; the judgment in AC 46880 is affirmed.

In this opinion the other judges concurred.

---

[51]The defendants contend that Carmela, presumably through Blue Mountain Partners, securitized and cancelled the debt attached to the Greenwich properties and that the debt should constitute reasonably equivalent value. To be sure, the jury was presented with evidence that Leonard, individually, recorded $13,775,221 of cancelled debt on his 2012 tax filing. Leonard's cancelled debt, however, did not inform the jury as to how much debt Western Greenwich Holdings, a separate entity and the former owner of the Greenwich properties, had cancelled pursuant to the transfer of the Greenwich properties to Blue Mountain Partners.